# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GLOBALFOUNDRIES U.S. INC.,

        Plaintiff,

  v.

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

        Defendant.

Case No. 7:23-cv-03348-KMK-AEK

**NON-PARTY RAPIDUS US, LLC'S
OBJECTIONS TO PLAINTIFF
GLOBALFOUNDRIES U.S. INC.'S
SUBPOENA DUCES TECUM**

---

Rapidus US, LLC ("Rapidus"), a non-party to this litigation, by and through its attorneys, hereby objects to the Subpoena Duces Tecum of Plaintiff GlobalFoundries U.S. Inc. ("GF" or "Plaintiff"), dated January 16, 2024, pursuant to Rules 26, 34 and 45 of the Federal Rules of Civil Procedure (the "Federal Rules") and the Local Civil Rules for the United States District Court for the Southern District of New York (the "Local Rules"), as follows:

## <u>GENERAL OBJECTIONS</u>

1.     Rapidus US, LLC objects to the Subpoena and its Requests because they are in violation of the U.S.-Japan Bilateral Consular Convention of 1963, insofar as they seek documents from Rapidus Corporation as a Japanese company, as well as any other Japanese entities affiliated with Rapidus.  As one court has explained:

> [An] attempt to seek discovery from a Japanese company merely by serving a Rule 45 subpoena on a [U.S.] subsidiary is in direct contravention of the evidentiary treaty between the United States and Japan—specifically, Article 17 of the U.S.-Japan Bilateral Consular Convention of 1963.  Article 17(1)(f) of the Treaty provides that a consular officer may "obtain copies of or extracts from documents of public registry," but not other documents, such as those in the hands of the third party. ***Thus, a party is obligated to proceed through consular officials to obtain documentary discovery.*** A party also has available to it the option of sending a

1

> letter rogatory pursuant to the court's inherent authority to do so. …
> [A party] cannot skirt these rules merely by serving a subsidiary of
> a foreign parent corporation on U.S. soil.  If that were the case, the
> U.S.-Japan Consular Convention (and the Hague Convention, for
> countries that are signatories thereto) would be entirely toothless for
> a large number of global companies with U.S. subsidiaries.

*Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *5-7 (N.D. Cal. Oct. 5, 2015) (emphasis added, citations omitted); *accord Hake v. Citibank, N.A.*, 2020 WL 1467132, at *6-8 (S.D.N.Y. Mar. 26, 2020) (citing *Fujikura* for the propositions that "service of Rule 45 subpoena on U.S. subsidiary of Japanese company violated evidentiary treaty between United States and Japan" and that "subpoenas must be served pursuant to international agreements, otherwise such agreements 'would be entirely toothless for a large number of global companies with U.S. subsidiaries'"; "The service rules cannot be avoided by serving a domestic subsidiary of a foreign corporation."); *see also, e.g.*, *Intell. Ventures I LLC v. Ricoh Americas Corp.*, 2015 WL 11120675, at *1-2 (D. Del. June 23, 2015) (letter rogatory from Magistrate Judge to Japanese judicial authorities, requesting document discovery pursuant to U.S.-Japan Bilateral Consular Convention).

Accordingly, if GF seeks discovery from Rapidus Corporation or any Japanese affiliates of Rapidus, it must do so in a manner permitted by the U.S.-Japan Bilateral Consular Convention—*i.e.*, by proceeding through consular officials.  GF's attempt to seek such discovery by serving a subpoena on Rapidus US, LLC as a U.S. subsidiary do not comply with that treaty.  Rapidus US, LLC therefore will not seek to produce documents from Rapidus Corporation or any Japanese affiliates in response to this Subpoena.

2.    Rapidus objects to the Subpoena because, to the extent that it purports to impose any production obligations upon Rapidus Corporation or any Japanese affiliates, it was not properly served in compliance with the U.S.-Japan Bilateral Consular Convention of 1963, as noted above.  Rapidus further objects to the Subpoena to the extent that it purports to impose any

production obligations upon Rapidus Corporation or any other Rapidus affiliates because, even assuming ordinary U.S. service rules applied, service upon Rapidus US, LLC would not qualify as service upon any other entities or confer jurisdiction over them.

3.    Rapidus objects to the Subpoena and its Requests to the extent they seek information from Rapidus as a non-party that is available or potentially available via party discovery.  As this District has held,

> "[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34. '[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].'"

*Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 69 (S.D.N.Y. 2020) (citations omitted) (quoting *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (quoting *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (quoting Wright & Miller, Federal Practice and Procedure § 2204))).[1]  This is a case alleging improper disclosures of information by IBM to Rapidus, among

---

[1] *Accord, e.g., Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming order "denying motion to compel production of documents from a nonparty"; "[T]he district court could properly require [movant] to seek discovery from its party opponent before burdening the nonparty" with that request); *Plaza Motors of Brooklyn, Inc. v. Bogdasarov*, 2023 WL 7684151, at *3 (E.D.N.Y. Feb. 13, 2023) ("[T]he requested information should be obtained from [defendant] directly at this stage, rather than from a non-party to this lawsuit.") (citing Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit … discovery" when it "can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Montana Res., Inc. v. ASARCO LLC*, 2019 WL 130579, at *2 (S.D.N.Y. Jan. 8, 2019) ("Respondent's subpoena seeking substantially the same documents from a nonparty, without first attempting to obtain the documents in the underlying action, is disproportionate to the needs of the case. Even if it were not disproportionate, the Court would conclude that a limit on discovery is appropriate where, as here, 'the discovery sought ... can be obtained from some other source that is more convenient, less burdensome, or less expensive'"); *JPMorgan Chase Bank v. Winnick*, 2006 WL 278192, at *2 (S.D.N.Y. Feb. 6, 2006) (denying motion to compel production under subpoena based on additional "protections provided to non-parties" from "undue burden" under Rule 45; "[I]t must be emphasized that Citibank is *not* a party to this litigation"); *Universitas Educ., LLC v. Benistar*, 2021 WL 8202406, at *8 (D. Conn. Dec. 22, 2021), *adopted*, 2022 WL 860411 (D. Conn. Mar. 22, 2022) (quoting *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) (quoting *Med. Components, Inc. v. Classical Medical, Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C. 2002))) ("The current generally prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a nonparty, and that the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs."); *Tolliver v. Abuelo's Int'l, LP*, 2021 WL 3188420, at *3 (S.D. Ohio July 28, 2021) (same); *Hale v. Bunce*, 2017 WL 10978857, at *2 (N.D. Ohio Dec. 15, 2017) (same); *Jacobson v. Hound Dog Pet Hotel, LLC*, 2005 WL 8164434, at *3 (D. Minn. May 23, 2005) (same); *see also Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 781198, at *2 (S.D.N.Y. Mar. 4, 2011) (quoting *BSN Med., Inc. v. Parker Med. Assoc., LLC*, 2011 WL 197217, at *2 (S.D.N.Y. Jan. 19, 2011) (citing *Fears v. Wilhelmina Model Agency, Inc.*, 2004 WL 719185,

others.    Document discovery of non-party Rapidus about the events at issue is therefore

unnecessary and unwarranted, because the documents allegedly disclosed by IBM already would

be in IBM's possession, as would any documents relevant to determining the propriety of such

disclosures.

4.    Rapidus objects to the Subpoena on grounds of relevance, undue burden, and

disproportionality because, while this is a case alleging improper disclosure of GF trade secrets by

IBM to Rapidus and others, GF broadly seeks information about Rapidus' business and its

agreements and relationship with IBM as a whole—without tethering its Requests to any specific

alleged disclosures at issue in this case.[2]  GF must provide more particularized information about

the specific claimed misappropriations of trade secrets at issue and limit its discovery requests

accordingly.  *See, e.g.*, *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 165-67

(S.D.N.Y. 2004) (requiring plaintiff to provide detailed information about specific alleged

misappropriations of its trade secrets and limiting discovery on that basis); *Power Conversion, Inc.*

*v. Saft Am., Inc.*, 1985 WL 1016, at *1 (S.D.N.Y. May 1, 1985) (agreeing that plaintiff should be

required to "first specifically identify[] the aspects of [its own] technology which it alleges have

been misappropriated … in order to obtain discovery in this action" and ordering into effect a

procedure for doing so).[3]

---

at *1 (S.D.N.Y. Apr. 1, 2004))) ("[W]here, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party.").

[2] *See* Order on GlobalFoundries' Mot. to Compel Compliance with Subpoena to Intel Corp., No. 5:23-mc-80292-SVK, ECF No. 34 (N.D. Cal. Dec. 13, 2023) ("[T]he record before this Court raises both factual issues (*e.g.*, the connection, if any, between 'GF Controlled Trade Secrets' and the 'IBM-Intel Partnership') and legal issues (*e.g.*, the relevance, if any, of non-party Intel's actual or planned use of GF's alleged trade secrets). As a result, the Court has concerns under Rule 26 about the relevance and proportionality of the information sought by the subpoena, and GF has not demonstrated substantial need under Rule 45 for the confidential information sought from Intel.").

[3] *Accord Xerox Corp. v. Int'l Bus. Machines Corp.*, 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974) ("Xerox should be able to identify in detail the trade secrets and confidential information alleged to have been misappropriated by IBM. Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not; and it is doubtful whether Xerox can undertake a meaningful discovery program, which includes its

5.    Rapidus objects to the Subpoena and its Requests to the extent they seek discovery of any valuations performed by Rapidus or of the value of any information to Rapidus, whether related to IBM's alleged disclosures or otherwise.  The value that any information or technology might have *to Rapidus*, based on its particular circumstances, is irrelevant to any claim or defense at issue.  Any such Rapidus valuation is irrelevant to determining the amount of GF's claimed damages, whether calculated on an actual loss basis, on an unjust enrichment basis, or in the form of expectation damages.  Further, even if that information had any relevance, there is other information already in GF's possession or available via party discovery that would be significantly more probative on this issue, including the IBM-Rapidus Master Agreement and any valuations performed by the parties themselves.  Moreover, even if the value of information or technology to Rapidus had any relevance, GF's Requests here are improper because they are not limited to

---

attempt to trace the flow of trade secrets and confidential information through IBM, without first identifying which trade secrets and what confidential information IBM has misappropriated."); *Digital Assurance Certification, LLC v. Pendolino*, 2018 WL 9669762, at *1, *6 (M.D. Fla. Sept. 9, 2018) (where defendants objected to "further discovery until [plaintiff] identifies the trade secrets it accuses Defendants of stealing," citing *Xerox* and holding that "Plaintiff has 14 days from the rendition of this Order to produce to Defendants copies of the documents containing the information Plaintiff contends are its Trade Secrets."); *Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) (plaintiff must "provide enough information about the alleged trade secrets" to "allow [party responding to discovery] to discern the relevancy of any discovery requests"); *Synygy, Inc. v. ZS Assocs., Inc.*, 2013 WL 3716518, at *2 (E.D. Pa. July 15, 2013) ("'It is not enough to claim that defendants will be able to learn the details through discovery.  Plaintiff must provide them now so we can evaluate the relevance of plaintiff's discovery and address any objections.'") (quoting *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) ("We will not permit plaintiff to go on a fishing expedition through Express Scripts' files.  Plaintiff must articulate what specific information they believe defendants have misappropriated, so we can assess whether its requests are reasonably tailored to discover relevant evidence.")); *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2012 WL 3113162, at *2 (D. Conn. July 31, 2012) ("[B]efore plaintiff gets the benefit of defendants' discovery ... plaintiff is ordered to provide defendants with a description that defines with reasonable specificity the alleged trade secrets which form the basis of its misappropriation claim"); *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680-81 (N.D. Ga. 2007) ("[R]equiring the plaintiff to sufficiently identify its trade secrets prior to allowing discovery on the defendant's trade secrets helps the court to determine the outer permissible bounds of discovery and prevents needless exposure of the defendant's trade secrets."); *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044 (N.D. Cal. 2004) ("[T]he early identification of trade secrets … prevents plaintiff from using the discovery process as a means to obtain the defendant's trade secrets [and] it frames the appropriate scope of discovery"); *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) ("The orderly disposition of cases involving claims of misappropriation of trade secrets cannot permit a situation where the details concerning the claimed trade secrets are not disclosed at an early date in the litigation.  Adequate discovery cannot be conducted in the absence of the specific disclosure which is required by this Order.").

seeking the value of any specific alleged GF trade secrets that IBM supposedly shared with Rapidus.

6.      Rapidus objects to the Subpoena and its Requests because they are exceptionally overbroad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative, in that they seek virtually all of the information in Rapidus' control relating to its business with IBM and any associated information and technology shared by IBM with Rapidus, as well as all subsequent work and development involving that information or technology.  The associated burdens are further multiplied by the fact that the requested information generally is exceedingly confidential and sensitive, and GF is a competitor in the semiconductor industry that could gain an unfair competitive advantage from the use of this information.  It is therefore particularly important and warranted that GF tailor its Requests to alleged disclosures of specific information that are substantiated by the existing record.  GF has failed entirely to do so.

7.      Rapidus objects to the Subpoena because it improperly seeks document discovery of Rapidus in a manner contrary to the Revised Case Management and Scheduling Order and its January 31, 2024 deadline for substantial completion of document discovery.  Specifically, the Court ordered that by that date, the parties must achieve

> Substantial completion of production of remaining documents responsive to the parties' document requests, subject to the parties' or any non-party's objections to such requests and relevant agreements and/or rulings from the Court and pursuant to agreed-upon search terms and remaining custodians.

By belatedly serving voluminous document requests on Rapidus with a deadline for objections of January 31st, GF has prevented the Court's contemplated document discovery process from occurring by that deadline—specifically, serving objections, agreeing upon any search terms and custodians, and then making a production—especially given the exceptional breadth of GF's Requests.  Further, there is no good cause for this belated service of the Subpoena, as a subpoena

could have been served at any point over the last several months, such that doing substantial document discovery after the substantial completion deadline would not have been necessary.

8.      Rapidus objects to the Subpoena and its Requests to the extent they improperly seek to conduct a fishing expedition to support potential claims against non-party Rapidus or others that are not claims alleged in the Complaint.  *See, e.g.*, *Hong v. JP White Plains, Inc.*, 2023 WL 5173785, at *3 (S.D.N.Y. July 31, 2023) (Krause, M.J.) (quoting *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (compiling cases) ("'[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a "fishing expedition" into actions or past wrongdoing not related to the alleged claims or defenses'")); *Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) ("Defendant's document requests constitute no more than a fishing expedition to discover additional instances of wrongdoing beyond those already alleged").

9.      Rapidus objects to the Subpoena to the extent that it purports to enlarge, expand or alter in any way the plain meaning and scope of any Request or to impose obligations greater than those required by the Federal Rules, Local Rules, applicable case law, and any applicable orders entered by the Court in the above-captioned action ("Action").

10.     Rapidus objects to the Subpoena and its Requests because they do not include reasonable restrictions regarding scope and time period, and because GF has failed to take reasonable steps to avoid imposing an undue burden or expense on Rapidus as a non-party to this Action.

11.     Rapidus objects to the Subpoena and its Requests because they seek information and documents that are in the possession, custody or control of GF, are more readily available to GF from other sources, or were already produced to GF in this case.

12.     Rapidus objects to the Subpoena and its Requests to the extent they seek production of documents that are not in the actual possession, custody or control of Rapidus.  In particular, Rapidus objects to GF's definition of "Rapidus" to include Rapidus Corporation and all of its "parents, predecessors, successors, subsidiaries, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, employees, engineers, scientists, or any other person acti[ng] on its/their behalf, including but not limited to Rapidus US, LLC," because Rapidus does not have possession, custody or control of all the documents of all the foregoing entities and individuals.  For the avoidance of doubt, Rapidus US, LLC does not have possession, custody or control of the documents of Rapidus Corporation.  Rapidus will not produce documents outside of its possession, custody and control.

13.     Rapidus objects to the Subpoena and its Requests to the extent they seek information regarding matters that are neither relevant to the claims or defenses of any party nor proportional to the needs of this Action.  Rapidus further objects to the Subpoena and its Requests to the extent they are vague, ambiguous, confusing, or self-contradictory, or fail to define material terms.  Rapidus will interpret the Subpoena and its Requests in a reasonable manner based on the information available to it.

14.     Rapidus objects to the Subpoena and its Requests as overbroad and unduly burdensome to the extent they seek information that is not tied to any specific trade secret that was allegedly misappropriated by IBM from GF, and thus is beyond the scope and bounds of the underlying case.

15.     Rapidus objects to this Subpoena and its Requests because they seek sensitive information from a competitor in the same industry that is not relevant or important to any claim

or defense in the underlying litigation, including Rapidus' confidential, proprietary, and trade secret information.

16.     Rapidus objects to the Subpoena and its Requests to the extent they seek documents that are subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  Rapidus does not intend to produce privileged documents or work product in response to any Request.  The production of any such documents or information is inadvertent and shall not be deemed a waiver of any such privilege or immunity.

17.     Rapidus objects to the Subpoena and its Requests insofar as they purport to assume disputed facts or facts that are inaccurate, call for or assume legal conclusions, are argumentative, or are otherwise defective in form.  Rapidus hereby denies any disputed or inaccurate facts or legal conclusions that are or may be assumed by the Subpoena or any part thereof.  By objecting to the Subpoena and its Requests, Rapidus does not admit to the accuracy of any factual matter asserted.

18.     No incidental or implied admissions are intended in these objections.  Rapidus' objection to all or any part of any Request should not be taken as an admission that Rapidus has in its possession, custody and control documents or information responsive to that Request.  No objection or limitation, or lack thereof, made herein shall be deemed an admission by Rapidus as to the existence or nonexistence of documents.  To the extent that Rapidus adopts any term defined by GF, it is solely for the purpose of objecting to these or subsequent Requests.

19.     Rapidus reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility of any information produced in response to the Requests at trial in this or any other Action for any purpose whatsoever.

20.     Rapidus fully reserves all its rights and objections without waiver, reserving the right to object on any ground at any time to a demand for further responses to these or any other requests in this Action.

21.     Rapidus objects to the Requests to the extent they purport to require the disclosure of information that Rapidus is otherwise restricted by law or by contract from disclosing, including, but not limited to, information subject to confidentiality obligations, without appropriate measures to permit appropriate compliance with each such law or contract at issue.

22.     Rapidus' objections to the Requests are made to the best of its present knowledge, information and belief.  Rapidus has not completed its investigation and thus reserves the right to amend, revise, correct, supplement or clarify any of its objections herein.

23.     The foregoing General Objections are incorporated into each Specific Objection set forth below.

## SPECIFIC OBJECTIONS

### REQUEST NO. 1:

Documents sufficient to show Rapidus's founding, organization, financing and strategic plans as described in the November 11, 2022 eeNews article by Peter Clarke titled "Consortium forms Rapidus to get Japan back into chip race at 2nm," including documents sufficient to show the estimates of "the amounts of funding . . . [required] to establish a full-fledged advance chip manufacturer with a road-map to future technology" without the IBM technology as stated in the above article.

### OBJECTIONS TO REQUEST NO. 1:

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative.  Rapidus also objects to this

Request because it calls for Rapidus to produce documents to substantiate assertions made by a third-party news article rather than Rapidus itself, and without limiting the specific documents sought to relevant case issues.

In addition, Rapidus objects to this Request because the information sought—including the amount of funding required to establish a full-fledged advanced chip manufacturer—is not tethered to any specific disclosures of alleged trade secrets and the value of *that* information or technology, and thus the information sought is irrelevant.  The amount of funding referenced in the Request is further irrelevant because it would include the costs of buildings, equipment, personnel and their training, land, and various other costs, which are distinct from the value of the alleged trade secrets supposedly disclosed in this case—let alone any purported GF losses (or IBM benefit) associated with those disclosures.  Rapidus further objects to this request as overly broad and unduly burdensome because it is not tied to any trade secret that has been purportedly misappropriated by IBM from GF.

Rapidus additionally objects to this Request because it seeks information from a party that reasonably would be expected to be in the possession of GF or available via party discovery.  In particular, the parties reasonably would be expected to have abundant information relevant to determining the costs required to establish a chip manufacturer or perform valuations of semiconductor technologies.

**REQUEST NO. 2:**

Documents and Communications, excluding Documents and Communications that Rapidus sent to or received from IBM, concerning Rapidus's decision to enter into the IBM-Rapidus Agreements, negotiation of their terms, and consideration of other alternatives or options, if any, and evaluation or analysis of the value of the IBM-Rapidus Agreements to Rapidus.

**OBJECTIONS TO REQUEST NO. 2:**

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, unreasonably cumulative and duplicative, and lacking in any reasonable time limitation. Rapidus also objects to this Request because the value-related and other information sought is not tethered to any specific disclosures of alleged trade secrets and the value of *that* information, but rather sweeps in the IBM-Rapidus Agreements in their entirety, and thus the information sought is irrelevant and overly broad. Further, "the value of the IBM-Rapidus Agreements *to Rapidus*," based on its particular circumstances, is irrelevant to any issue in the case, including damages. Similarly, "Rapidus's decision to enter into the IBM-Rapidus Agreements," any "negotiation of their terms," or Rapidus's "consideration of other alternatives or option" are irrelevant to any issue in the case, including damages.

Rapidus additionally objects because even if any of the requested value-related or other information had any relevance, there is other information already in GF's possession or available via party discovery that would be significantly more probative on this issue, including the IBM-Rapidus Master Agreement and any valuations performed by the parties themselves.

**REQUEST NO. 3:**

Documents and Communications sufficient to show Rapidus's assessment or evaluation, including but not limited to the technical merit and value, of the IBM Licensed Technology, as that term is defined in the Master Agreement, and how that information informed (i) Rapidus's decision to enter into the IBM-Rapidus Agreements and (ii) the amount of compensation Rapidus was willing to pay IBM in connection with the IBM-Rapidus Agreements.

**OBJECTIONS TO REQUEST NO. 3:**

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative. Rapidus also objects to this

Request because the value-related and other information sought is not tethered to any specific disclosures of alleged trade secrets and the value of *that* information or technology, but rather sweeps in the entirety of the IBM Licensed Technology, and thus the information sought is irrelevant and overly broad. Further, Rapidus' assessment of the value of the IBM Licensed Technology and its value based on Rapidus' own individual circumstances is irrelevant to any issue in the case, including damages. Rapidus additionally objects because even if any of the requested value-related or other information had any relevance, there is other information already in GF's possession or available via party discovery that would be significantly more probative on this issue, including the IBM-Rapidus Master Agreement and any valuations performed by the parties themselves.

**<u>REQUEST NO. 4:</u>**

Documents sufficient to show the expected time and research and development costs that Rapidus expected to save through the IBM-Rapidus Partnership for the development of the technology identified in Project Agreement Nos. 1 and 2 to the Master Agreement, including but not limited to the analysis of the time and costs of alternate options, if any, considered by Rapidus in lieu of the IBM-Rapidus Partnership.

## OBJECTIONS TO REQUEST NO. 4:

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative. Rapidus also objects to this Request because the cost-savings information sought is not tethered to any specific disclosures of alleged trade secrets and the value of *that* information or technology, but rather sweeps in the entirety of the IBM-Rapidus Partnership. Further, Rapidus' assessment of its own potential cost savings based on its own particular circumstances is irrelevant to any issue in the case, including damages. Rapidus additionally objects because even if any of the requested value-related or other information had any relevance, there is other information already in GF's possession or available via party discovery that would be significantly more probative on this issue, including the IBM-Rapidus Master Agreement, as well as any analyses performed by the parties themselves pertaining to the alleged trade secrets that GF claims were disclosed and their value or cost-saving benefits.

## REQUEST NO. 5:

All Documents, Communications and Things relating to the business opportunity associated with the IBM-Rapidus Partnership, including but not limited to analysis of the target market(s) and competitors, projections of capital requirements, estimated time to market, projected revenue, costs, profits and cash flow, projected return on investment analyses, strategic plans, business planning and timelines, and strengths, weaknesses, opportunities, and threats ("SWOT") analyses.

## OBJECTIONS TO REQUEST NO. 5:

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, unreasonably cumulative and duplicative, and lacking in any reasonable time limitation. Rapidus also objects to this Request because the information sought—regarding the entire "business opportunity associated with the IBM-Rapidus Partnership"—is not tethered to any

specific disclosures of alleged trade secrets and the value of *that* information or technology, but rather sweeps in the entirety of the IBM-Rapidus Partnership.

To the extent this Request is targeted at value-related information, Rapidus' assessment of the value of the IBM-Rapidus Partnership to Rapidus based on its own particular circumstances is irrelevant to this case. There is also other information already in GF's possession or available via party discovery that would be significantly more probative on this issue, including the IBM-Rapidus Master Agreement, as well as any analyses performed by the parties themselves pertaining to the alleged trade secrets that GF claims were disclosed and their value or cost-saving benefits.

Further, this Request broadly seeks competitive market and industry information that is largely irrelevant and unimportant to this case; and, to the extent it had any relevance, such information reasonably would be expected to be in the possession of the parties and available via party discovery. Accordingly, seeking such general market and industry information from non-party Rapidus is unnecessary and unwarranted. In addition, Rapidus objects to the terms "market(s)" and "competitors" as vague and ambiguous in this context.

**REQUEST NO. 6:**

Documents and Communications sufficient to show whether and to what extent the consideration Rapidus agreed to pay IBM for the IBM Licensed Technology was offset or reduced based on the value of Rapidus Licensed Technology, as that term is defined in the IBM-Rapidus Agreements.

**OBJECTIONS TO REQUEST NO. 6:**

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative. Rapidus also objects to this Request because the information sought regarding the consideration Rapidus agreed to pay IBM for the IBM Licensed Technology and how it was impacted by the Rapidus Licensed Technology

is not tethered to any specific disclosures of alleged trade secrets and the value of *that* information or technology. Further, the requested information about how any Rapidus Licensed Technology impacted the negotiated consideration to be paid to IBM could be obtained via party discovery, so there is no valid basis for seeking discovery of non-party Rapidus regarding this issue. To the extent GF seeks information about how Rapidus personally and subjectively valued any Rapidus Licensed Technology, Rapidus objects because that information is irrelevant to this case.

**REQUEST NO. 7:**

Documents sufficient to (1) identify any party other than IBM with whom Rapidus has shared any IBM Licensed Technology and (2) the IBM Licensed Technology shared with each such party.

**OBJECTIONS TO REQUEST NO. 7:**

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative. Rapidus also objects to this Request because the information sought about sharing of IBM Licensed Technology by Rapidus is not tethered to any specific disclosures of alleged trade secrets and any information or technology divulged in those materials, but rather sweeps in the entirety of the IBM Licensed Technology. Further, Rapidus objects to this Request because it is not relevant to GF's pleaded claims based on alleged disclosures by IBM, but rather it is an improper fishing expedition to seek information about Rapidus to support new claims against Rapidus or others. Rapidus further objects because this Request seeks information subject to third-party confidentiality obligations.

**REQUEST NO. 8:**

All Documents, Communications, and Things containing or relating to any IBM Licensed Technology distributed to Rapidus Employees visiting and/or working at the Albany Nanotech Complex.

**OBJECTIONS TO REQUEST NO. 8:**

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, unreasonably cumulative and duplicative, and lacking in any reasonable time limitation.  Rapidus also objects to this Request because the requested information about IBM Licensed Technology allegedly distributed to Rapidus-affiliated employees is not tethered to any specific disclosures of alleged trade secrets and any technological information divulged in those materials, but rather sweeps in all IBM Licensed Technology distributed to Rapidus-affiliated employees in Albany.  Further, this Request seeks information that reasonably would be expected to be in GF's possession already or available via party discovery, and therefore seeking such discovery from Rapidus is unnecessary and unwarranted.

**REQUEST NO. 9:**

All Documents, Communications, and Things containing or relating to any IBM Licensed Technology viewed and/or created by Rapidus Employees while visiting and/or working at the Albany Nanotech Complex.

**OBJECTIONS TO REQUEST NO. 9:**

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, unreasonably cumulative and duplicative, and lacking in any reasonable time limitation.  Rapidus also objects to this Request because the requested information about any such IBM Licensed Technology viewed or created by Rapidus-affiliated employees is not tethered to any specific disclosures of alleged trade secrets and any technological information divulged in those materials, but rather sweeps in all IBM Licensed Technology and related materials viewed or created by Rapidus-affiliated employees in Albany.  Rapidus further objects to this Request because it seeks material created by Rapidus itself, which consists of highly sensitive and

competitive information, and which GF has also failed to tie to any alleged disclosure of any trade secret at issue. Further, this Request seeks information that reasonably would be expected to be in GF's possession already or available via party discovery, and therefore seeking such discovery from Rapidus is unnecessary and unwarranted.

**REQUEST NO. 10:**

All Documents, Communications, and Things, containing or relating to the IBM Licensed Technology that IBM provided to Rapidus as part of "IBM's Responsibilities" identified in Section 4.1 of Appendix A and Section 4.1 of Appendix A2 to the Master Agreement.

**OBJECTIONS TO REQUEST NO. 10:**

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, unreasonably cumulative and duplicative, and lacking in any reasonable time limitation. Rapidus also objects that this Request—which appears to seek *all* of Rapidus' documents relating to the IBM Licensed Technology—is not tethered to any specific disclosures of alleged trade secrets and any technological information divulged in those materials. Further, this Request seeks information that reasonably would be expected to be in GF's possession already or available via party discovery, and therefore seeking such discovery from Rapidus is unnecessary and unwarranted.

**REQUEST NO. 11:**

All Documents and Communications and Things, including but not limited to presentations, forecasts or projections, business plans, valuations, strategic plans or other planning Documents from September 1, 2022 to the present related to the IBM Licensed technology or any derivative products. This would include documents prepared by Rapidus internally, or prepared by any third party at the direction of Rapidus. These documents should be sufficient to show the benefits, monetization, distribution, use, or intended use of the IBM Licensed Technology both

within Rapidus and for its consortium of companies including but not limited to Toyota, Sony, Softbank, Denso, Kioxia, MUFG Bank, NEC, and NTT.

## OBJECTIONS TO REQUEST NO. 11:

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative. Rapidus also objects that this Request—which appears to seek *all* of Rapidus' documents relating to the IBM Licensed Technology or any derivative products from September 2022 onward—is not tethered to any specific disclosures of alleged trade secrets and any technological information divulged in those materials. In addition, Rapidus objects that its plans and views regarding the benefits, monetization, distribution, or uses of the IBM Licensed Technology based on its own particular circumstances are irrelevant to this case, including the issue of damages. Rapidus further objects that this Request seeks information that reasonably would be expected to be in GF's possession already or available via party discovery—including information pertaining to the value, benefits, and potential monetization and uses of the technologies at issue—and therefore seeking such discovery from Rapidus is unnecessary and unwarranted. Rapidus further objects to this Request as vague and ambiguous, as the term "derivative products" is undefined and susceptible to multiple interpretations.

## REQUEST NO. 12:

Documents and Communications, excluding Documents and Communications that Rapidus sent to or received from IBM, that refer to GF, GF's business, or GF's relationship with IBM, including but not limited to any written or oral contention, proposal, suggestion, statement, analysis, or other thing discussing whether the IBM Licensed Technology infringes or misappropriates any of GF's intellectual property rights.

**OBJECTIONS TO REQUEST NO. 12:**

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, unreasonably cumulative and duplicative, and lacking in any reasonable time limitation. Rapidus also objects that this Request for all documents relating to GF is not tethered to any specific disclosures of alleged trade secrets or any other part of any claim or defense. This Request improperly would sweep in, for example, any discussions of the overall competitive landscape and Rapidus' overall business strategy, or general references to the unremarkable fact that GF formerly did business with IBM. In addition, Rapidus objects to this Request because it extends broadly to privileged communications and work product relating to litigation between GF and IBM, without reasonable tailoring to exclude such privileged materials from the scope of the Request, which would result in undue burden from wasteful document review of privileged materials.

Rapidus further objects to this Request because Rapidus' internal views regarding GF and its misappropriation allegations are irrelevant to GF's claims that IBM improperly disclosed information to Rapidus. Any Rapidus documents regarding this issue that were unshared with IBM would have no impact on either liability or damages issues in a case against IBM; and if any such documents had been shared with IBM, GF could obtain them through party discovery. To the extent GF seeks this discovery in this litigation against IBM to see if it can build a claim against Rapidus, that is a misuse of discovery and a fishing expedition that is forbidden under Rule 26.

**REQUEST NO. 13:**

Documents and Communications, excluding Documents and Communications that Rapidus sent to or received from IBM, concerning any indemnification that Rapidus has sought, intends to seek, is considering seeking, or has considered and decided against seeking, from IBM

relating to GF's claim in the underlying action pursuant to Sections 9.4.3 and 9.4.4 of the Master Agreement.

**OBJECTIONS TO REQUEST NO. 13:**

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative. Information about any indemnification of Rapidus by IBM or the possibility thereof has no relevance to any claim or defense. Nor is this information discoverable to prove bias. *See In re Lloyd's Am. Tr. Fund Litig.*, 1998 WL 50211, at *20 (S.D.N.Y. Feb. 6, 1998) (denying discovery of any indemnification agreements; "[T]he relationship between Lloyd's and Citibank will certainly be raised by plaintiffs in their effort to show bias, and the details of any indemnification agreements that may exist add nothing to that argument.").[4] Further, assuming information concerning any indemnification of Rapidus by IBM or the possibility thereof had any relevance, that information could be sought through party discovery. Nor, in that event, would there be any valid basis under Rule 26 for seeking broad discovery of *all* documents relating to the possibility of indemnification.

Rapidus further objects to this Request because it extends broadly to privileged communications and work product, without reasonable tailoring to exclude such privileged materials from the scope of the Request.

---

[4] *See also Fish v. Air & Liquid Sys. Corp.*, 2017 WL 697663, at *19-20 (D. Md. Feb. 21, 2017) ("Facts and circumstances surrounding any demand for indemnification have no bearing on this lawsuit"); *Geometwatch Corp. v. Hall*, No. 14-cv-00060, ECF No. 276 (N.D. Utah July 12, 2016) (denying motion to compel because "indemnity agreements are not relevant to the subject matter of the case and add nothing to GeoMetWatch's arguments regarding potential bias"); *BPP Retail Properties, LLC v. N. Am. Roofing Servs., Inc.*, 300 F.R.D. 59, 63 (D.P.R. 2014) (holding that discovery of "indemnification agreements [was] beyond the scope of Rule 26"); *In re Zicam Cold Remedy Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2010 WL 4715951, at *1 (D. Ariz. Nov. 15, 2010) ("[A]n indemnity agreement that does not relate to a claim or defense is not within the scope of discoverable material."); *Borders v. Chase Home Fin. L.L.C.*, 2010 WL 890485, at *1-2 (E.D. La. Mar. 5, 2010) ("Chase's second motion to quash is granted as to the indemnity agreement" because it is "not relevant to" the claims and defenses at issue).

**REQUEST NO. 14:**

      All non-privileged Documents and Communications related to GF's April 20, 2023 letter to Rapidus regarding this lawsuit.

**OBJECTIONS TO REQUEST NO. 14:**

      Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative.  Rapidus further objects on grounds of privilege[5] because GF's April 20, 2023 letter was a notice requesting that Rapidus preserve documents.  Subsequent Rapidus internal communications regarding this issue, including any litigation hold notice and the drafts and communications leading up to it, would be protected by privilege.  *See, e.g.*, *Roytlender v. D. Malek Realty, LLC*, 2022 WL 5245584, at *4 (E.D.N.Y. Oct. 6, 2022) (compiling cases) ("Instructions to preserve documents by way of formal litigation hold notices exchanged between attorneys and their clients are privileged communications and generally immune from discovery.").  Further, any such documents relating to GF's preservation notice and any resulting litigation hold by Rapidus would be irrelevant to the claims and defenses at issue.  *See, e.g.*, *Franck v. New York Health Care Inc.*, 2022 WL 471333, at *2 (S.D.N.Y. Feb. 16, 2022) (holding that, even if litigation hold information were not privileged, it would be irrelevant).

      Rapidus additionally objects to this Request for documents relating to its communications about GF's document preservation letter because such "discovery on discovery" is impermissible until documents already have been produced, and the party seeking this discovery has "provide[d] an adequate factual basis to justify the discovery" based on a showing of "some deficiency in the production."  *Kaye v. N.Y. City Health & Hosps. Corp.*, 2020 WL 283702, at *1 (S.D.N.Y. Jan.

---

[5] As used here, "privilege" includes the attorney-client privilege, work-product protection, and any other applicable protection or immunity.

21, 2020); *Winfield v. City of New York*, 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018) (same);

*Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *7

(S.D.N.Y. July 14, 2016) (same); *Freedman v. Weatherford Int'l Ltd.*, 2014 WL 3767034, at *2-3

(S.D.N.Y. July 25, 2014) (same); *see also Orillaneda v. French Culinary Inst.*, 2011 WL 4375365,

at *8 (S.D.N.Y. Sept. 19, 2011) (barring discovery on discovery based on "the absence of any

specific reasons for believing that defendant's production to date is deficient").

## REQUEST NO. 15:

A copy of any common interest agreement between IBM and Rapidus.

## OBJECTIONS TO REQUEST NO. 15:

Rapidus objects to this Request as irrelevant, disproportionate, and unreasonably

cumulative and duplicative. Rapidus further objects to this Request because any such agreement

would be privileged. *See, e.g., A.I. Credit Corp. v. Providence Washington Ins. Co.*, 1997 WL

231127, at *4 (S.D.N.Y. May 7, 1997) ("[J]oint defense agreements are generally considered

privileged."); *U.S. v. Bicoastal Corp.*, 1992 WL 693384 at *6 (N.D.N.Y. Sept. 28, 1992)

("[D]isclosure of the existence of such [a common-interest joint-defense] agreement would be an

improper intrusion into the preparation of the defendants' case. Thus, this court will deny any

motion by the Government to be provided with any joint defense agreement should one exist.";

entities with "common interests … are entitled to share information protected by the attorney-

client privilege without danger that the privilege will be waived by disclosure to a third person").[6]

Such an agreement also would be irrelevant. *See Steuben Foods, Inc. v. GEA Process

Eng'g, Inc.*, 2016 WL 1238785, at *2 (W.D.N.Y. Mar. 30, 2016) (quoting *Biovail Lab'ys Int'l SRL*

---

[6] *Cf. U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (citations omitted) ("The joint defense privilege, more properly identified as the 'common interest rule,' … serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.").

*v. Watson Pharms., Inc.*, 2010 WL 3447187, at *1 (S.D. Fla. Aug. 30, 2010)) ("'A joint defense agreement that merely contains language that parties typically include in joint defense agreements to protect from discovery privileged information revealed to a third party is not relevant to any parties' claims or defenses.'").  In addition, if any such agreement existed, it would be in the possession of IBM, so there would be no basis for seeking its production by non-party Rapidus.

## REQUEST NO. 16:

All Documents and Communications and Things relating to actual or planned semiconductors, manufacturing tools, or related products, that incorporate, or contemplate incorporating, IBM Licensed Technology, or Technologies developed in or out of the IBM-Rapidus Partnership, such as may be identified in technology roadmaps, business plans and forecasts, product plans, actual or draft product specifications, marketing materials, customer lists and correspondence.

## OBJECTIONS TO REQUEST NO. 16:

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative.  Rapidus also objects that this Request—which appears to seek *all* of Rapidus' documents relating to potential incorporation of the IBM Licensed Technology in any products or technologies—is not tethered to any specific disclosures of alleged trade secrets and any technological information divulged in those materials. Rapidus further objects that this Request seeks information that reasonably would be expected to be available via party discovery, and therefore seeking such discovery from Rapidus is unnecessary and unwarranted.  Further, this Request broadly seeks competitive market and industry information that is largely irrelevant and unimportant to this case.

## REQUEST NO. 17:

All Documents and Communications and Things that define, describe, assess, or comment on the actual or potential market for the IBM Licensed Technology or any derivative products including, but not limited to, factors such as market size, forecasts or projections of market growth, market penetration, etc.

## OBJECTIONS TO REQUEST NO. 17:

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative.  Rapidus also objects that this Request for documents regarding the market for the IBM Licensed Technology or any derivative products because it is not tethered to any specific disclosures of alleged trade secrets and any technological information divulged in those materials.  Further, the assessment of any market for the IBM Licensed Technology *from the perspective of Rapidus*, based on its particular circumstances, is irrelevant to any claim or defense at issue.  Rapidus further objects that this Request seeks information that reasonably would be expected to be in GF's possession already or available via party discovery—including information regarding the markets for what are allegedly GF's own technologies that IBM allegedly shared with Rapidus, as well as the markets for semiconductor-related technologies more broadly—and therefore seeking such discovery from Rapidus is unnecessary and unwarranted.

In addition, Rapidus objects to the terms "market" and "derivative products" as vague and ambiguous in this context.

## REQUEST NO. 18:

All Rapidus annual and quarterly reports, income statements, balance sheets, and statements of cash flow on a monthly, quarterly, and annual basis (both audited and unaudited as well as both an overall and segment basis) and reports to the government of Japan from inception to the present.

**OBJECTIONS TO REQUEST NO. 18:**

Rapidus objects to this Request as irrelevant, overly broad, unduly burdensome, disproportionate, and unreasonably cumulative and duplicative.  There is no relevant basis for such general discovery of non-party Rapidus' finances, in a lawsuit in which GF claims damages to its own finances based on disclosures allegedly made by IBM.  To the extent GF seeks information for purposes of estimating its damages, such information would be in GF's own possession and—assuming any further information were needed—would be available via party discovery.  Further, even if any Rapidus financial materials had any potential relevance to GF's damages, GF's own materials and materials available via party discovery would be significantly more probative on that issue.   In addition, Rapidus objects to this Request as overly broad because the information sought—Rapidus' general financials—is not tethered to any specific disclosures of alleged trade secrets and the value of *that* information or technology, and thus the information sought is irrelevant.  There is therefore no legitimate basis for seeking any financial discovery of Rapidus, let alone the extremely broad discovery sought here.

Rapidus further objects to the term "reports to the government of Japan" as vague and ambiguous.


Dated: January 30, 2024

By: s/Krishnan Padmanabhan
Krishnan Padmanabhan
Mark E. Rizik Jr.
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700
kpadmanabhan@winston.com
mrizik@winston.com

*Counsel for Nonparty Rapidus US, LLC*

26

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that a true and correct copy of the foregoing

document was served on January 30, 2024, by e-mail and overnight mail, upon:

Clement J. Naples (*e-mail only*)
Maximilian A. Grant (*e-mail only*)
Jason C. Hegt (*e-mail only*)
Corey A. Calabrese
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1331
Email:
clement.naples@lw.com
max.grant@lw.com
jason.hegt@lw.com
corey.calabrese@lw.com

Blake R. Davis (*e-mail only*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8033
Email: blake.davis@lw.com

Sami Al-Marzoog (*e-mail only*)
LATHAM & WATKINS LLP
555 11th Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Email: sami.almarzoog@lw.com

Dated: New York, New York
       January 30, 2024

s/Krishnan Padmanabhan
Krishnan Padmanabhan