# EXHIBIT 5

Case 7:24-mc-00292-KMK-AEK   Document 15   Filed 07/11/24   Page 1 of 13
Case 1:24-mc-00654-JAO-WRP   Document 1-8   Filed 11/15/24   Page 2 of 14
PageID.150

**Clement J. Naples**
Direct Dial: +1.212.906.1331
clement.naples@lw.com

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

# LATHAM & WATKINS LLP

July 11, 2024

**VIA ECF – FILED UNDER SEAL**

Hon. Andrew E. Krause, U.S.M.J.
U.S. District Court for the Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4146

Dear Judge Krause:

Plaintiff GlobalFoundries U.S., Inc. ("GF") respectfully requests that the Court order non-party Rapidus US, LLC ("Rapidus") to produce documents responsive to RFPs 2-4, 6, 8-9, 11-12, and 16-17 in GF's subpoena *duces tecum*. Like Intel, Rapidus—together with its parent, Rapidus Corporation—is inextricably linked with GF's allegations against IBM because IBM undisputedly disclosed a significant amount of GF's trade secrets to Rapidus, which seeks to use them to unfairly compete with GF in the market. To understand the full extent of IBM's unlawful disclosure, Rapidus' improper use of GF's trade secrets, and the resulting injury, GF served narrow subpoenas to Rapidus and Rapidus Corporation, seeking highly relevant documents that IBM undisputedly does not possess. Despite failing to move to quash GF's subpoena, Rapidus flatly (and baselessly) refuses to produce a single document (or make a single witness available for deposition) based only on the same unsubstantiated and legally erroneous objections that Intel asserted to stonewall discovery. GF thus requests that the Court overrule Rapidus' objections and grant this motion.

**I.    FACTUAL BACKGROUND**

The Court is familiar with the factual allegations supporting GF's claims of trade secret

Case 7:24-mc-00292-KMK-AEK   Document 15   Filed 07/11/24   Page 2 of 13
Case 1:24-mc-00654-JAO-WRP   Document 1-8   Filed 11/15/24   Page 3 of 14
PageID.151

Page 2

**LATHAM&WATKINS**LLP

misappropriation and breach of contract against IBM.  ECF 78.[1]  Rapidus, backed by a consortium of Japanese companies, was founded in 2022 to "promote development of 2nm generation semiconductors and establish mass production technology … in Japan."  Ex. 5.  Rapidus Corp. formed Rapidus in 2023 to allow its collaboration with IBM to be "consolidated across both US and Japan geographies."  Ex. 6 at -963; Ex. 7 at -093-094.  IBM improperly sought to license and disclose GF's trade secrets to Rapidus without GF's consent.  ECF No. 1 ¶¶ 123-138.

Rapidus admitted it lacked the experience or knowledge necessary to produce advanced semiconductors because it was unable to "commercialize" such products until "[a]fter completion of [its] commissioned research" and "international collaboration" with IBM.  Ex. 5.  Rapidus agreed to pay IBM $1.15B for access to "decades of expertise in semiconductor research and design," to which GF owns the exclusive licensing right.  *See* ECF No. 377-1.  To transport this "expertise" back to Japan, Rapidus has sent hundreds of its employees to IBM's Albany Nanotech Complex—where the Lotus Notes Database containing GF's trade secrets resides.  ECF No. 377-2, 377-3.  The modicum of discovery produced by IBM to date confirms it has unlawfully disclosed over 170 documents containing GF's advanced semiconductor trade secrets to Rapidus, which Rapidus plans to "commercialize" to compete with GF.  Ex. 5; ECF No. 339-3.  Indeed, over 70% of the technical information in IBM-Rapidus Kraken and Rodan chip design manuals—which IBM has analogized to the "secret sauce" in chip manufacturing—is identical to technical information to which GF owns exclusive rights, confirming the "expertise" Rapidus licensed belongs to GF.

On January 16, 2024, GF subpoenaed Rapidus US and Rapidus Corp. seeking highly relevant documents uniquely within their possession, custody, and control.  *See generally* Exs. 1,

---

[1] All "ECF" citations refer to the docket in Case No. 7:23-cv-3348-KMK-AEK.

2

Case 7:24-mc-00292-KMK-AEK    Document 15    Filed 07/11/24    Page 3 of 13
Case 1:24-mc-00654-JAO-WRP    Document 1-8    Filed 11/15/24    Page 4 of 14
PageID.152

LATHAM&WATKINS LLP

2. On January 30, both refused to produce any documents. Exs. 3, 4. The parties conferred for months, during which GF made multiple compromise proposals, to no avail. *See, e.g.*, Ex. 8.[2]

## II.   LEGAL STANDARD

Under Rule 45(d)(2)(B)(i), GF may "move the court for the district where compliance is required for an order compelling production." Compliance in this District is appropriate because the Northern District of New York transferred this case to this District, and Rapidus US consented to resolution before this Court. *In re Subpoena to Rapidus US, LLC*, No. 24-mc-0011, Dkt. 1-1 (N.D.N.Y. May 24, 2024). "The definition of relevancy" is governed by Rule 26(b)(1), which allows GF to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[3] *Zinter Handling, Inc. v. General Elec. Co.*, No. 04-cv-500, 2006 WL 3359317, at *4 (N.D.N.Y. Nov. 16, 2006). Once relevance is established, the subpoenaed party (Rapidus) "bears the burden" to show "an undue burden." *Nat'l Ass'n for Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*, No. 17-cv-8943, 2018 WL 11260468, at *2 (S.D.N.Y. Apr. 27, 2018) ("*Ramapo*").

## III.   ARGUMENT

### A.   Rapidus Should Produce Documents Responsive To GF's RFPs

The Court should compel Rapidus to produce documents responsive to RFPs 2-4, 6, 8-9, 11-12, and 16-17. As discussed below, GF crafted these RFPs to seek only the documents that are highly relevant to GF's claims and not within IBM's possession by, for example, limiting many RFPs to "sufficient to show" (e.g., RFPs 3, 4, 6, 11) and expressly "excluding Documents and

---

[2] Rapidus also moved for a protective order against GF's deposition subpoenas to three employees of "Rapidus entities" (ECF No. 375), effectively seeking to bar any discovery from Rapidus.

[3] All emphasis added, and internal citations and quotation marks omitted, unless otherwise noted.

Case 7:24-mc-00292-KMK-AEK   Document 15   Filed 07/11/24   Page 4 of 13
Case 1:24-mc-00654-JAO-WRP   Document 1-8   Filed 11/15/24   Page 5 of 14
   PageID.153
Page 4

**LATHAM&WATKINS**LLP

Communications that Rapidus sent to or received from IBM" (e.g., RFPs 2, 12).  Given their narrow scope and Rapidus' key role in IBM's misappropriation, the discovery sought is warranted.

1. **Each RFP Seeks Relevant Documents Not Available From IBM**

**RFPs 2-4, and 6** seek documents about Rapidus' "decision to enter into the IBM-Rapidus Agreements, negotiation of their terms, and consideration of other alternatives" (RFP 2), as well as documents sufficient to show:  Rapidus' "evaluation … of the IBM Licensed Technology," and how it informed Rapidus' $1.15B payment to IBM (RFP 3); the time and costs Rapidus expected to save through for developing the specific technology described in the IBM-Rapidus Agreements (RFP 4); and how the payment to IBM "was offset or reduced" by the value of Rapidus Licensed Technology (RFP 6).  Ex. 1 at 7.  Each RFP is narrow.  RFP 2 excludes documents "sent to or received from IBM," and the others only seek documents "sufficient to show." *Id*.  And each RFP is tied to the specific IBM-Rapidus agreements (RFP 2, 4) or definitions therein (RFPs 3, 6). *Id.*

Rapidus has not argued that these RFPs seek irrelevant documents.  Nor could it.  First, documents showing how Rapidus valued the trade secret information IBM improperly disclosed ("IBM Licensed Technology") establish that GF's trade secrets "derive[] independent economic value … from not being generally known to … another person who can obtain economic value from" its use, an element of establishing trade secret protection.  18 U.S.C. § 1839(3)(B).  Second, the discovery sought is relevant to evaluating the damages caused by IBM's unlawful disclosures.  Under the well-established *University Computing Co. v. Lykes-Youngstown Corp.* framework, GF's damages expert may calculate a reasonable royalty by determining the "fair licensing price" IBM should have paid GF to use its trade secrets.  504 F.2d 518, 539 (5th Cir. 1974).  That ultimate licensing price may be informed by prices others "may have paid" to access GF's trade secrets, such as the price that Rapidus paid to access the IBM Licensed Technology (which includes many

4

Case 7:24-mc-00292-KMK-AEK   Document 15   Filed 07/11/24   Page 5 of 13
Case 1:24-mc-00654-JAO-WRP   Document 1-8   Filed 11/15/24   Page 6 of 14
                                        PageID.154

LATHAM&WATKINS LLP

of GF's trade secrets). *Id.* GF's expert may also assess damages based on GF's "actual loss" from IBM's misappropriation, which includes the profits lost from IBM usurping GF's opportunity to license its technology to Rapidus. ECF No. 363 at 1-2; *see Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107-08 (9th Cir. 2001) (affirming "lost profits" using "royalties plaintiffs could have made by licensing their trade secrets"). While GF knows the ultimate $1.15B price, GF is entitled to discover how Rapidus valued the specific information provided by IBM, alone and relative to the other aspects of its partnership with IBM. This will permit GF's damages expert to properly apportion the value attributed to the misappropriated trade secrets and determine damages under both a reasonable royalty theory and an actual loss theory (e.g., lost licensing profits). ECF No. 363 at 6-7. For example, RFP 6 seeks documents showing how the consideration that Rapidus agreed to pay IBM "was offset or reduced" by the value of the Rapidus Licensed Technology; such documents will allow GF's expert to exclude the latter value from the measure of damages (i.e., apportion). GF's expert may also calculate unjust enrichment damages by evaluating "the cost of developing the trade secret," ECF No. 363 at 2-3, and RFP 4 seeks documents showing the time and R&D costs that Rapidus expected to save by partnering with IBM as opposed to independently developing the technology at issue itself. Ex. 1 at 7.

**RFPs 8 and 9**, as narrowed by GF, seek documents "***sufficient to show*** any IBM Licensed Technology distributed to (RFP 8) or created by (RFP 9) Rapidus Employees visiting and/or working at the Albany Nanotech Complex." Both RFPs only seek documents sufficient to show, are limited to the timeframe starting when Rapidus began sending employees to IBM's Albany Nanotech Complex (i.e., April 2023) to the present, and are tied to the specific technology (defined as "IBM Licensed Technology") covering GF's trade secrets, as defined in the IBM-Rapidus agreements. Ex. 1 at 3-4. Here, too, Rapidus does not dispute relevance. The discovery sought

5

Case 7:24-mc-00292-KMK-AEK   Document 15   Filed 07/11/24   Page 6 of 13
Case 1:24-mc-00654-JAO-WRP   Document 1-8   Filed 11/15/24   Page 7 of 14
PageID.155

**LATHAM & WATKINS** LLP

will show the information that Rapidus employees received, and what Rapidus did with that information. Ex. 10 (IBM_Fed_GF-0066728). Such third-party discovery is highly relevant to establishing the scope of misappropriation and damages. *BLST Northstar, LLC v. Atalaya Capital Mgmt. LP*, No. 24-mc-66, 2024 WL 2279195, at *4 (S.D.N.Y. Mar. 12, 2024) ("In particular, what [non-party] Atalaya did with the information provided by [defendant] is relevant to proving that the information allegedly improperly disclosed by [defendant] was used by Atalaya to [plaintiff's] detriment and caused it damage.").

**RFPs 11, 16, and 17** seek documents showing Rapidus' valuations of technology licensed from IBM (RFP 11), "actual or planned" use of that technology (RFPs 11, 16), and assessment of the "actual or potential market" for such technology (RFP 17). Ex. 1 at 8, 10. IBM does not have internal Rapidus documents, and RFP 11 is limited to documents created after September 1, 2022. What a non-party (Rapidus) "did with the information provided … is relevant to proving that the information allegedly improperly disclosed by [the defendant] was used by [the non-party] to [the plaintiff's] detriment and caused it damage." *BLST*, 2024 WL 2279195, at *4. But, unlike the non-party in *BLST*, who "produced thousands of documents and [] agreed to provide a deposition witness," Rapidus refuses to produce ***any*** documents or witnesses for deposition. *Id.* at *1. The requested discovery is necessary to understand how Rapidus has used, and will use, GF's trade secrets to compete with GF in the market; absent such discovery, the damages to GF from IBM's improper disclosure will be significantly understated. GF's expert may calculate damages using the "actual loss" from IBM's misappropriation, 18 U.S.C. § 1836(b)(3)(B), which can include the business opportunities, competitive advantage, goodwill, revenue, profits, and sales lost to Rapidus. *See Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 808-09 (2d Cir. 2023). And because IBM's misappropriation is enabling Rapidus "to enter the

6

**LATHAM&WATKINS**LLP

market and compete" and, eventually, will cause GF "to lose market share," GF may recover its "losses due to price erosion" and the "profits" it would have made but for IBM's misappropriation. *Stanacard, LLC v. Rubard LLC*, No. 12-cv-5176, 2016 WL 6820741, at *2-4 (S.D.N.Y. Nov. 10, 2016); *see also SPS Techs., LLC v. Boeing Co.*, No. 19-cv-3365, 2019 WL 2409601, at *7 (N.D. Ill. June 7, 2019) (ordering non-party to produce "purchase information" that "may indicate lost purchase opportunities"); *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 498-99 (S.D. Cal. 2014).

**RFP 12**, as narrowed, seeks documents "that refer to GF's relationship with IBM, GF's intellectual property rights, or GF's claims in this lawsuit against IBM, including any discussion of whether the IBM Licensed Technology misappropriates any of GF's intellectual property rights." Ex. 1 at 9. RFP 12 expressly excludes documents "sent to or received from IBM." Any documents in which Rapidus describes its views on GF's intellectual property, GF's relationship with IBM, and/or the merits of GF's claims (or IBM's defenses) are highly relevant to liability and damages. *Southeastern Mech. Servs., Inc. v. Brody*, No. 9-cv-86, 2009 WL 3095642, at *11 (N.D. Ga. June 22, 2009) (compelling third parties to produce "non-privileged communications" that "discuss or reference the [underlying] litigation, including the claims or defenses").

### 2. Rapidus Cannot Carry Its Burden To Curtail The Highly Relevant And Narrowly-Tailored Discovery That GF Seeks

As discussed above, each subject RFP seeks documents that are highly relevant to GF's claims and rebutting IBM's defenses. Consequently, the burden is on Rapidus to demonstrate they are not discoverable. *Ramapo*, 2018 WL 11260468, at *2. Rapidus cannot approach that burden.

*First*, Rapidus contends the RFPs are "not tethered to any specific disclosures of alleged trade secrets." Ex. 3 at 13. That is wrong on the facts and law. Party discovery confirms that IBM has improperly disclosed at least 170 documents containing GF's trade secrets to Rapidus,

7

Case 7:24-mc-00292-KMK-AEK    Document 15    Filed 07/11/24    Page 8 of 13
Case 1:24-mc-00654-JAO-WRP    Document 1-8    Filed 11/15/24    Page 9 of 14
PageID.157

**LATHAM&WATKINS**LLP

including design materials substantively identical to information that GF owns the exclusive right. *Supra* at 2. GF narrowly tailored each RFP to its claims against IBM surrounding the specific trade secrets at issue, including by linking RFPs 3, 6, 8-9, 11, and 16-17 to the specific technology ("IBM Licensed Technology") in the IBM-Rapidus Agreements that includes GF's trade secrets. *Supra* at 4-7. To the extent Rapidus contends that GF's trade secrets are not sufficiently specific, the Court has rejected that argument from IBM and, as a matter of law, Rapidus' "substantive challenge to the merits" is not "a reasonable basis to withhold discovery." *Twinstrand Biosciences, Inc. v. Guardant Health, Inc.*, No. 21-cv-1126, 2022 WL 20402683, at *1 (D. Del. Oct. 18, 2022).

**Second**, the Court should overrule Rapidus' conclusory, unsubstantiated burden objections because it "has not offered anything to credibly support that producing the documents at issue would be burdensome, let alone unduly so." *BLST*, 2024 WL 2279195, at *6. Evaluating this factor requires weighing the alleged burden against the value of the discovery to GF while considering "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Amphenol Corp. v. Fractus, S.A.*, No. 19-mc-160, 2019 WL 2521300, at *6 (S.D.N.Y. June 19, 2019). By identifying specific categories of documents and using terms Rapidus itself defined, GF has described the documents sought with extreme "particularity." *Id.* To date, Rapidus has only lodged "boilerplate objections" which are legally "inappropriate and unpersuasive." *Leibovitz v. City of New York*, No. 15-cv-546, 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017). And, because GF's RFPs are highly relevant and narrowly tailored (e.g., documents sufficient to show or limited to specific timeframes or agreements), the value of the information sought significantly outweighs any purported burden, particularly given that Rapidus is paying IBM $1.15B to access GF's trade secrets (*inter alia*). *Amphenol*, 2019 WL 2521300, at *6.

8

Case 7:24-mc-00292-KMK-AEK Document 15 Filed 07/11/24 Page 9 of 13
Case 1:24-mc-00654-JAO-WRP Document 1-8 Filed 11/15/24 Page 10 of 14
PageID.158

LATHAM&WATKINS LLP

***Third***, Rapidus cannot invoke the protections of Rule 45(d)(3)(B) because it never moved to quash. FED. R. CIV. P. 45(d)(3)(B)(i) (the Court "may, ***on motion***, quash … the subpoena if it requires … disclosing a trade secret"). Thus, any arguments it have raised in a timely filed motion to quash, including based on Rule 45(d)(3), are waived. *See Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 442 (E.D. Va. 2018) ("A movant must satisfy the threshold requirement of filing a 'timely motion' before a court can quash a subpoena under the mandatory provisions of Rule 45(d)(3)."); *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 516 (S.D.N.Y. 2022) ("[T]o be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena."); *Burroughs Corp. v. Dataware Sources, Inc.*, No. 86-cv-608, 1987 WL 10190, at *2 (D. Mass. Apr. 28, 1987) (failure to move to quash "waives any objections to document production which could be raised in such a motion").

Even if not waived, Rule 45(d)(3) does not apply because Rapidus has never identified any specific Rapidus trade secret implicated by GF's RFPs. Nor could it, as the RFPs are narrowly tailored to seek documents showing, for example, the use and valuation of GF's trade secrets. Further, even if it had identified some specific confidential information, Rapidus cannot meet its burden to identify "***specific demonstrations of fact***, supported where possible by affidavits and concrete examples ***rather than broad, conclusory allegations of potential*** harm," which "show that disclosure would cause significant harm to its competitive and financial position." *Lyman v. Greyhound Lines, Inc.*, No. 20-cv-1812, 2021 WL 3811298, at *5 (D.S.C. Aug. 26, 2021) (denying protective order because non-party failed to meet Rule 45(d)(3) burden); *In re Salomon Bros. Treasury Litig.*, No. 91-cv-5471, 1994 WL 62852, at *2 (S.D.N.Y. Feb. 22, 1994) (explaining that the subpoenaed entity must show that "disclosure will work a clearly defined and very serious injury as established by specific claims and not conclusory statements"); *BLST*, 2024 WL 2279195,

Case 7:24-mc-00292-KMK-AEK   Document 15   Filed 07/11/24   Page 10 of 13
Case 1:24-mc-00654-JAO-WRP   Document 1-8   Filed 11/15/24   Page 11 of 14
PageID.159

at *5 (same).  Nor could Rapidus show a concrete, non-speculative risk of harm from disclosure of documents to GF's outside counsel (not GF itself)—any such concerns are nonexistent given the highly-restrictive protective order (ECF No. 149) allowing for AEO designations, which adequately protects any commercially sensitive information.  *See BLST*, 2024 WL 2279195, at *5 ("The disclosure of confidential information on an attorneys eyes only basis is a routine feature of civil litigation involving trade secrets. … The purpose of this form of limited disclosure is to prevent a party from viewing the sensitive information while nevertheless allowing the party's lawyers to litigate on the basis of that information."); *In re Subpoena Duces Tecum Served on Bell Commc'ns Rsch., Inc.*, No. MA-85, 1997 WL 10919, at *3 (S.D.N.Y. Jan. 13, 1997).  Regardless, even if it applied, the substantial need standard is readily met because the documents sought are highly relevant and not available from IBM.  *See supra* at 4-7; *In re Salomon*, 1994 WL 62852, at *2 (finding substantial need "is fairly clear" because "[i]n some instances the information cannot be obtained elsewhere" and "important in verifying liability and the amount of potential damages in this very complex case").  And Rapidus' "emphasis on the parties' competitive position and risk of disclosure of confidential information to some extent ***strengthens*** the basis for ordering disclosure given that the purpose of the Subpoena is to determine the extent to which [Rapidus] made use of [GF's] competitively sensitive information."  *BLST*, 2024 WL 2279195, at *6.

***Fourth***, Rapidus contends that GF can "potentially" obtain these documents from IBM.  Ex. 3 at 3.  Rapidus is wrong.  "[N]ot all of the documents" sought "are necessarily available from [IBM]," let alone "easily obtainable."  *Cal. Att'y Lending, LLC v. Legal Recovery Assocs., LLC*, No. 23-mc-00020, 2023 WL 7037474, at *6 (W.D.N.Y. Oct. 26, 2023).  Rapidus has not attempted to meet its burden to establish otherwise.  For example, RFPs 2 and 12 exclude documents "sent to or received from IBM."  *Supra* at 4, 7.  Other RFPs seek Rapidus' internal documents, such as

10

Case 7:24-mc-00292-KMK-AEK   Document 15   Filed 07/11/24   Page 11 of 13
Case 1:24-mc-00654-JAO-WRP   Document 1-8   Filed 11/15/24   Page 12 of 14
                              PageID.160

**LATHAM&WATKINS**LLP

its "assessment or evaluation" of the information at issue (RFP 3), the information "considered by Rapidus" (RFP 4), and documents "prepared by Rapidus internally." *Supra* at 4-5. And Rapidus is "not a typical non-party who has marginal involvement in the events at issue," *BLST*, 2024 WL 2279195, at *4, it should produce responsive documents "even if some … may prove duplicative." *Amphenol*, 2019 WL 2521300, at *11; *Regeneron Pharm., Inc. v. Merus, B.V.*, No. 14-cv-1650, Dkt. 50 at 4 (S.D.N.Y. May 20, 2014); *Volt Elec. NYC Corp. v. A.M.E., Inc.*, No. 20-cv-4185, 2021 WL 185306, at *3 (S.D.N.Y. Jan. 19, 2021) (denying motion to quash because plaintiff's requests are not "unreasonably" duplicative); *Gucci Am., Inc. v. Ashley Reed Trading, Inc.*, No. 00-cv-6041, 2001 WL 1173503, at *2 (S.D.N.Y. Oct. 4, 2001) ("[T]he theoretical availability of information from another source is not a reason, in itself, to preclude non-party discovery.").

### B. Rapidus Should Produce All Documents Within Its "Control"

Rapidus has objected that GF cannot seek documents from a "U.S. subsidiary" of "Rapidus Corporation as a Japanese company." Ex. 3 at 1-2. But, "[t]he fact that the documents are situated in a foreign country does not bar their discovery." *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984). Under the Rule 34 of the Federal Rules of Civil Procedure, Rapidus must produce all responsive documents within its "possession, custody or control," regardless of location, including any offshored in Japan. FED. R. CIV. P. 34(a)(1).

"[T]he mere fact that the subpoenaed documents are in [Japan] does not exempt them from discovery." *Hunter Douglas, Inc. v. Comfortex Corp.*, No. M8-cv-85, 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999). To determine "whether a corporation within the United States can be compelled to produce documents held by a foreign affiliate, this Court must first consider the nature of the relationship between the corporation and its affiliate." *Id.* "[I]n the subsidiary-parent context, courts in this Circuit have found control where the domestic corporation can obtain

11

Case 7:24-mc-00292-KMK-AEK   Document 15   Filed 07/11/24   Page 12 of 13
Case 1:24-mc-00654-JAO-WRP   Document 1-8   Filed 11/15/24   Page 13 of 14
                                  PageID.161

**LATHAM&WATKINS**LLP

documents from its foreign parent to assist itself in litigation; ... can easily obtain documents from its parent when it has an interest in doing so; where documents ordinarily flow freely between [the domestic corporation and foreign parent]; or where the domestic corporation has the practical ability to obtain the requested documents for use in its business." *Doe Run Peru S.R.L. v. Trafigura AG*, No. 11-mc-77, 2011 WL 13059042, at *2 (D. Conn. Aug. 24, 2011). Courts compel parties to produce documents where, as here, a non-party has "access to the documents" and the "ability to obtain the[m]." *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 467 (D. Mass. 1993); *Hunter*, 1999 WL 14007, at *3 (compelling production as "the relationship" between the subsidiary and foreign parent was "such that documents ordinarily flow freely between them").

In addition to the documents it possesses, has custody of, or controls, Rapidus must also produce documents maintained by Rapidus Corporation in Japan. Rapidus has "control" of such documents because it has "access" to the documents sought and the "ability to obtain the[m]." *Addamax*, 148 F.R.D. at 467. Indeed, as confirmed by Exhibit 6 attached to this motion, Rapidus' research is "consolidated across both US and Japan geographies," with the goal of having Rapidus employees learn technical information (including, e.g., GF's trade secrets) from IBM at the Albany Nanotech Complex and unlawfully repatriate that information back to its parent. Ex. 6 at -963; Ex. 5. Emails produced by IBM establish that Rapidus engineers frequently "onboard[] in Japan" before moving to the Albany Nanotech Complex. *See, e.g.*, Ex. 9 at -011. Rapidus, availing itself of doing such business in New York, should produce responsive documents within its control, regardless of where they are maintained. *See Cooper*, 102 F.R.D. at 920.

12

Case 7:24-mc-00292-KMK-AEK   Document 15   Filed 07/11/24   Page 13 of 13
Case 1:24-mc-00654-JAO-WRP   Document 1-8   Filed 11/15/24   Page 14 of 14
PageID.162

LATHAM&WATKINS LLP

IV.     CONCLUSION

GF requests the Court compel Rapidus to produce documents responsive to RFPs 2-4, 6, 8-9, 11-12, and 16-17 within ten days of the Court's order, including any such documents within its "control," irrespective of whether they are located in Japan or maintained by Rapidus Corp.

                    Respectfully submitted,

                    */s/ Clement J. Naples*
                    Clement J. Naples

CC: All counsel of record (via ECF)