# EXHIBIT 6

Case 7:24-mc-00292-KMK-AEK   Document 17    Filed 07/24/24   Page 1 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 2 of 18
                              PageID.164

WINSTON & STRAWN LLP

NORTH AMERICA   SOUTH AMERICA   EUROPE   ASIA

200 Park Avenue
New York, NY 10166
T +1 (212) 294-6700
F +1 (212) 294-4700

**VIA ECF**                                                                July 24, 2024

The Honorable Andrew E. Krause
The Hon. Charles L. Brieant Jr. U.S. Courthouse
300 Quarropas Street, White Plains, NY 10601-4150

**Re:**   *GlobalFoundries U.S. Inc. v. International Business Machines Corporation*

Dear Judge Krause:

Nonparty Rapidus US, LLC ("Rapidus US" or "Rapidus") writes in opposition to the motion of Plaintiff GlobalFoundries U.S. Inc. ("GF") to compel it to produce documents (the "Motion"). The Motion should be denied for two reasons. First, the Motion violates the U.S.-Japan Bilateral Consular Convention. GF demands Rapidus (a U.S. entity) to produce documents of its unserved Japanese parent, Rapidus Corporation ("Rapidus Japan"). Seeking documents from a Japanese company via "service of [a] Rule 45 subpoena on [the] U.S. subsidiary of [the] Japanese company violate[s] [the] evidentiary treaty between [the] United States and Japan." *Hake v. Citibank*, 2020 WL 1467132, at *6-8 (S.D.N.Y. Mar. 26, 2020). But that is precisely what GF has done. If GF seeks discovery of Rapidus Japan, it instead must follow the treaty's procedures.

Second, the Motion should be denied because GF seeks virtually all substantive documents Rapidus has. This is not hyperbole—GF seeks all documents relating to any and all products that might incorporate technologies developed out of the IBM-Rapidus partnership. *Infra* 4-8. This sweeps in Rapidus' entire business. GF's RFPs are as overbroad and burdensome as is imaginable.

This is not a situation where GF served a broadly phrased subpoena and then offered to narrow it reasonably. GF has refused to make any meaningful change to the overall set of documents being requested. Ex. 1. Rapidus reminded GF that this Court previously had limited discovery in this case based on established case law regarding the scope of trade secret discovery. But GF would not agree to abide by this Court's discovery limits in its discovery of Rapidus. GF did not just express a different view of the Court's limits—it would not agree to follow them. *Id.*

Case 7:24-mc-00292-KMK-AEK   Document 17    Filed 07/24/24   Page 2 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 3 of 18
                             PageID.165

Page 2

The burdens imposed by GF's overbroad requests are multiplied by the exceptional confidentiality of the materials it seeks, as described in the accompanying declaration of Rapidus' head of management, Yuzo Fukuzaki. GF has not shown a need for *any* such intrusive discovery of Rapidus regarding the narrow damages-based relevance grounds asserted in its Motion, given the availability of IBM's and GF's own records, let alone the massive discovery that GF requests.

## LEGAL STANDARD

"Parties seeking discovery 'bear the burden of initially showing relevance.'" *Franck v. N.Y. Health Care*, 2022 WL 806581, at *2 (S.D.N.Y. Mar. 17, 2022) (quoting *New Falls Corp. v. Soni*, 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020)). "Importantly, 'it is incumbent upon the moving party to provide the necessary connection between the discovery sought and the claims or defenses.'" *Id.* Discovery also must be "proportional to the needs of the case" and not "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(1)-(2).

Under Rule 26(b), "[i]f a court finds that commercially sensitive materials are relevant to a party's claim, the court balances that party's need … against the producing party's interest in protecting the materials from a potential competitor." *Grand River Enters. v. King*, 2009 WL 330213, at *4-6 (S.D.N.Y. Feb. 9, 2009). "'The availability of the [] information from alternative sources ... has at times been viewed as the most important of all factors'" in that balancing. *Id.*

"[I]nformation should be obtained from [a party] directly" when possible, "rather than from a non-party." *Plaza Motors v. Bogdasarov*, 2023 WL 7684151, at *3 (E.D.N.Y. Feb. 13, 2023) (citing Fed. R. Civ. P. 26(b)(2)(C)).[1] "When a subpoena to a non-party seeks confidential commercial information, … [Rule 45(d)(3)(B)] places the burden on the demanding party to show a substantial need for the information that cannot otherwise be met without undue hardship." *Ft.*

---

[1] *Accord Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (party discovery of documents is "preferable to … subpoenaing them from a non-party").

Case 7:24-mc-00292-KMK-AEK   Document 17   Filed 07/24/24   Page 3 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 4 of 18
PageID.166

Page 3

*James Corp. v. Sweetheart Cup*, 1998 WL 709813, at *2 (S.D.N.Y. Oct. 8, 1998). This requirement to show "substantial need" applies equally when a nonparty has "raised objections to non-party subpoenas and [a party] has moved to compel" as when a nonparty moves to quash. *Id*. at *1-2.[2]

## ARGUMENT

**I.     GF's subpoena violates the U.S.-Japan Bilateral Consular Convention.**

GF's subpoena is unenforceable and violates the U.S. Japan Bilateral Consular Convention to the extent it seeks to use a U.S. subpoena to Rapidus US, LLC to obtain documents from its unserved Japanese parent, Rapidus Japan. As one court has explained:

> Article 17(1)(f) of [that] Treaty provides that a consular officer may "obtain copies of or extracts from documents of public registry," but not other documents, such as those in the hands of the third party … [A] party is obligated to proceed through consular officials to obtain documentary discovery … [or it may] send[] a letter rogatory.[3]

Accordingly, seeking documents from a Japanese company via "service of [a] Rule 45 subpoena on [the] U.S. subsidiary of [the] Japanese company violate[s] [the] evidentiary treaty between [the] United States and Japan." *Hake*, 2020 WL 1467132, at *6-8. But that is what GF has purported to do—GF's subpoena seeks documents from "Rapidus," and defines Rapidus to include *both* Rapidus US, LLC (the subpoenaed entity) and Rapidus Japan. Mot. Ex. 1 at 4; Mot. Ex. 3 at 1-2.

GF cites *Hunter Douglas, Inc. v. Comfortex Corp.* for the proposition that "'the mere fact that the subpoenaed documents are in [Japan] does not exempt them from discovery.'" Mot. 11. But the actual quote from that case says "Canada," not "Japan." 1999 WL 14007, at *3-4 (S.D.N.Y. Jan. 11, 1999). U.S. discovery in *Canada* is governed by "the Hague Convention on

---

[2] *See also Synopsys, Inc. v. Ubiquiti Networks*, 2018 WL 11349903, at *3 (N.D. Cal. Mar. 30, 2018) (where nonparty objected to subpoena, denying motion to compel under "substantial need" standard); *In re EpiPen Mktg.*, 2018 WL 3818914, at *1 (D. Kan. Aug. 10, 2018) (same); *Echostar Comm'c'ns v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998) (same).

[3] *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *5-7 (N.D. Cal. Oct. 5, 2015); *cf. Intell. Vents. v. Ricoh Ams.*, 2015 WL 11120675, at *1-2 (D. Del. June 23, 2015) (letter rogatory to Japan).

Case 7:24-mc-00292-KMK-AEK   Document 17    Filed 07/24/24   Page 4 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 5 of 18
PageID.167

Page 4

Taking Evidence Abroad" (*id.*)—unlike Japan, which "is not a signatory to the Hague Evidence Convention" and has its own set of rules. *Fujikura*, 2015 WL 5782351, at *7 & n.4. "[GF] cannot skirt these rules merely by serving a subsidiary of a foreign parent corporation on U.S. soil." *Id.*

GF's request for discovery of Rapidus Japan through Rapidus US is also independently unavailable because Rapidus US does not have possession, custody or control of its parent's documents and "does not have the right or the ability to demand [its] documents." Fukuzaki Decl. ¶¶ 7-12. Nor can GF satisfy the narrow exception under which a subpoena to a subsidiary that is a "mere department" and "agent" of its parent can reach the parent itself. *Jazini v. Nissan Motor*, 148 F.3d 181, 184-85 (2d Cir. 1998) (holding Nissan USA was not mere department of Nissan Japan). Rapidus US is a distinct entity from Rapidus Japan, and it manages its own day-to-day business and operations. Fukuzaki Decl. ¶¶ 7-12. The two entities cooperate on certain tasks because it is "mutually beneficial," not because they are indistinct. *Id.*

**II.     GF's motion to compel near-total discovery of Rapidus' records should be denied based on extreme overbreadth and burden, GF's complete failure to tailor its requests for relevance, and GF's failure to show any substantial need.**

GF's Motion also must be denied because GF seeks virtually every substantive document that Rapidus has, flouting Rules 26 and 45. For example, GF seeks:

> [a]ll Documents, Communications, and Things … relating to actual or planned semiconductors, manufacturing tools, or related products, that incorporate, or contemplate incorporating, IBM Licensed Technology, or Technologies developed in or out of the IBM-Rapidus Partnership.

Mot Ex. 1, RFP No. 16. The very function of Rapidus US, LLC is to develop semiconductor technology in partnership with IBM, so a request for all materials relating to that is a request for nearly everything. Fukuzaki Decl. ¶¶ 5, 14-20. "On [its] face the subpoena[] … [is] overbroad simply by virtue of the fact that [it] request[s] any and all documents relating in any imaginable way" to the IBM-Rapidus partnership. *Matter of App. of Frates*, 1985 WL 2752, at *1-2 (S.D.N.Y.

Case 7:24-mc-00292-KMK-AEK   Document 17    Filed 07/24/24   Page 5 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 6 of 18
PageID.168

Page 5

Sept. 25, 1985). This is "all the more clear in light of [GF's] meagre showing as to the particular relevance," and the "proprietary nature of the information." *Id.*; Fukuzaki Decl. ¶¶ 21-25.

GF has made no attempt to limit its subpoena based on the specific trade secrets at issue, as required under Rule 26. *E.g.*, *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 166-67 (S.D.N.Y. 2004) (discovery must be limited based on the "specific trade secret incorporated in" products); *Power Conversion, Inc. v. Saft Am., Inc.*, 1985 WL 1016, at *2-3 (S.D.N.Y. May 1, 1985) (ordering procedure to determine "areas in which the parties' technologies are similar and might form the basis for a claim of misappropriated trade secrets," in order to provide "a threshold delineation of relevant areas of inquiry" for document discovery).[4]

The scope of trade secret discovery under Rule 26 has been litigated extensively in this case, and the foregoing case law has been applied to place specific, principled limits on discovery (the "Discovery Limits"). Over nine months ago, the Court limited GF's discovery to:

> documents and information that IBM disclosed to Intel and Rapidus that relate to the research and development of technology that GlobalFoundries worked on with IBM so long as those documents and that information is from prior to the start of the Intel collaboration in terms of the disclosures to Intel and prior to the start of the Rapidus collaboration with respect to disclosures to Rapidus.

Ex. 2, Oct. 6, 2023 Conf. Tr. 87:4-18. Then, in January, this Court rejected GF's request "for IBM to produce the entirety of the repository of documents that exists for the Intel/IBM and the Rapidus/IBM partnerships" as "overbroad [and] not proportional to the needs of the case." Ex. 3, Jan. 19, 2024 Conf. Tr. 58:25-59:9, 110:24-111:22, 115:14-15.

---

[4] *Accord Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) (holding that relevancy of discovery requests would depend what the specific alleged trade secrets were); *Synygy, Inc. v. ZS Assocs., Inc.*, 2013 WL 3716518, at *2 (E.D. Pa. July 15, 2013) (same) (citing *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) (same)); *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680-81 (N.D. Ga. 2007) (same); *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044 (N.D. Cal. 2004) (same); *Xerox Corp. v. Int'l Bus. Machines Corp.*, 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974) (same).

Case 7:24-mc-00292-KMK-AEK   Document 17    Filed 07/24/24   Page 6 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 7 of 18
PageID.169

Page 6

GF is obligated to abide by these Discovery Limits, both under Rule 26 and the law of the case doctrine. *See In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). Instead, GF's Motion ignores them. Remarkably, despite repeated requests from Rapidus, GF would not agree to comply with this Court's Discovery Limits. Ex. 1.

GF also ignores the litigation history of its similarly broad subpoena to Intel. In December 2023, the Northern District of California held that GF had not shown "the connection, if any, between 'GF Controlled Trade Secrets' and the 'IBM-Intel Partnership'" or "the relevance, if any, of non-party Intel's actual or planned use of GF's alleged trade secrets." Ex. 4. In response, GF prepared a narrowed subpoena to Intel that, in GF's view, was "tailored to the particular information and GF trade secrets that IBM improperly disclosed to Intel." No. 24-mc-00129, ECF No. 39 at 1. But when GF sent Rapidus a subpoena in January 2024, it did not limit its RFPs in that way. Indeed, GF refused to meaningfully narrow the set of documents it sought. Ex. 1.

This is not because GF is incapable of doing so. For example, GF asserts in its Motion that IBM "has unlawfully disclosed over 170 documents containing GF's advanced semiconductor trade secrets to Rapidus." Mot. 2. But GF has refused to narrow its subpoena based on the specific documents shared with Rapidus that allegedly contain GF trade secrets (Ex. 1), even though its discovery of IBM was limited by the Court in a similar manner.[5]

GF also refused Rapidus' request to limit its RFPs to documents not available from IBM (*id.*)—contrary to GF's representation that it seeks "documents that IBM undisputedly does not possess" (Mot. 1). By refusing to limit its discovery in this manner, and refusing to accept the

---

[5] Further, GF has not shared these 170 documents with Rapidus, and GF's motion cites to a sealed filing about them. Mot. 2. This is an *ex parte* filing with respect to Rapidus, and the Court should not consider it as a basis for relief. *E.g.*, *Liu v. Chan*, 2022 WL 2467015, at *1 (E.D.N.Y. Jan. 26, 2022) ("[C]ounsel essentially reiterated that the communications were … entitled to sealing. … But that is not an adequate basis to have the Court decide a motion to compel *ex parte*.").

Case 7:24-mc-00292-KMK-AEK   Document 17   Filed 07/24/24   Page 7 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 8 of 18
PageID.170

Page 7

Court-ordered Discovery Limits, GF is improperly seeking to use Rapidus to get a "second bite at the apple" after being denied the same IBM-Rapidus-partnership discovery from IBM. This is a misuse of Rule 45 discovery, which is not an "end-run around the regular discovery process under Rules 26 and 34." *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 69 (S.D.N.Y. 2020).

The costs of engaging in the total, business-wide document review sought by GF would be unfathomable. Rapidus US and Japan have at least 14,600 gigabytes of data in just a subset of their available repositories. Fukuzaki Decl. ¶ 17. Assuming a conservatively low review cost of $18,000 per gigabyte,[6] such a document review would cost over $262 million. Further, these cost burdens would be multiplied by the extreme confidentiality and technical nature of the cutting-edge semiconductor information at issue. *Id.* ¶¶ 23-25. Protecting Rapidus from this intrusive burden is all the more warranted because GF is Rapidus' competitor, and GF's pleadings do not allege any misconduct by Rapidus. Compl. ¶ 138 (ECF No. 1 in main action).[7]

GF cannot show that this exceptionally broad discovery of "commercially sensitive materials" is non-duplicative and relevant, much less that GF has a "need" for it. *Grand River*, 2009 WL 330213, at *4. Nor can GF correct its failure to show relevance or need by arguing that the protective order will safeguard Rapidus' information. "The protective order is not a substitute for establishing relevance or need. … It would be divorced from reality to believe" that GF "would

---

[6] *See* Zimmerman, *Economics & the Evolution of Non-Party Litigation Funding*, 12 N.Y.U. J.L. & Bus. 635, 643 n.29 (2016) (citing estimates of "$40k per gigabyte of information produced and $18k per gigabyte of information reviewed"); Kluttz, *Automated Decision Support Techs. & the Legal Profession*, 34 Berkeley Tech. L.J. 853, 863 (2019) ("e-discovery production costs averaged about $18,000 per gigabyte of information"); Sherer, *Merger & Acquisition Due Diligence*, 21 Rich. J.L. & Tech. 5, 120 (2015) ("costs ranging up to $30,000 per gigabyte of calibrated data").

[7] *See Ft. James*, 1998 WL 709813, at *1-3 (denying discovery; "[T]here is no assertion that [nonparties] have engaged in any activity that infringes [plaintiff's IP] … [a]nd … [plaintiff] is a direct competitor of [nonparty]."); *Micro Motion*, 894 F.2d at 1324-28 (denying damages discovery of nonparty; "[Plaintiff] has … put forth not a shred of evidence on the infringing nature of [nonparty's] products … [Plaintiff] here is unmoored and trolling.").

Case 7:24-mc-00292-KMK-AEK   Document 17    Filed 07/24/24   Page 8 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 9 of 18
                              PageID.171

Page 8

serve as the champion of its competitor … to maintain the confidentiality designation or to limit public disclosure as much as possible during trial." *Micro Motion v. Kane Steel*, 894 F.2d 1318, 1324-28 (Fed. Cir. 1990). Further, all it would take is one slip by a sleep-deprived attorney, or an unwitting staff or IT employee, to wreak devastating harm on Rapidus' business.[8]

**III.   The Court should deny GF's Motion altogether, rather than narrowing GF's subpoena based on its stated relevance grounds, because GF has failed to show that any materials it seeks from Rapidus have any non-duplicative relevance and GF has failed to show a substantial need for those materials.**

While GF's subpoena is exceptionally broad, GF's relevance grounds are much narrower and generally are tied to proving GF's damages and the value of the claimed trade secrets.[9] As shown below, however, on those damages-related topics, GF can obtain far more probative information from IBM and GF's own records than Rapidus has. The Court therefore should deny GF's Motion altogether, rather than ordering discovery on those damages-related topics.

**A.   GF cannot establish the relevance of Rapidus' materials by offering hypothetical damages theories to which they hypothetically might relate.**

GF asserts that Rapidus documents are relevant to three measures of the damages on its DTSA claim. The DTSA "allows a court to award: (1) 'damages for actual loss caused by the misappropriation;'[10] and (2) 'damages for any unjust enrichment caused by the misappropriation … that is not addressed in computing damages for actual loss'; or (3) 'in lieu of damages measured by any other methods … a reasonable royalty for the misappropriator's unauthorized disclosure or

---

[8] *See Litton Inds. v. Chesapeake & Ohio Rwy.*, 129 F.R.D. 528, 531 (E.D. Wis. 1990) ("There is a constant danger inherent in disclosure of confidential information pursuant to a protective order").

[9] *Cf. Natera, Inc. v. CareDx, Inc.*, 2023 WL 3763808, at *5 (N.D. Cal. May 31, 2023) (denying discovery where plaintiff focused its relevance arguments on a subset of the requested information but "offer[ed] no evidence as to why it requested all [the other] information in the first place").

[10] GF also asserts breach of contract claims, for which damages typically are measured similarly to actual loss damages under the DTSA. *See Phyto Tech v. Givaudan SA*, 2023 WL 1437714, at *10 (S.D.N.Y. Jan. 31, 2023) (same damages for breach of contract and DTSA actual losses).

Case 7:24-mc-00292-KMK-AEK   Document 17   Filed 07/24/24   Page 9 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 10 of 18
PageID.172

Page 9

use of the trade secret.'"[11]  Based on these three prongs of the DTSA, GF lists many hypothetical damages theories that it claims might make Rapidus' data relevant, stating that its damages expert:

> *may* calculate a reasonable royalty by determining the "fair licensing price" IBM should have paid GF to use its trade secrets … [or] *may* [] assess damages based on … the profits lost from IBM usurping GF's opportunity to license its technology to Rapidus … [or] *may* [] calculate unjust enrichment damages by evaluating "the cost of developing the trade secret" … [based on] the time and R&D costs that Rapidus expected to save by partnering with IBM … [or] *may* calculate damages using the "actual loss" from IBM's misappropriation … [based on] business opportunities, competitive advantage, goodwill, revenue, profits, and sales lost to Rapidus … [or under a] los[t] market share [theory] … GF *may* recover its "losses due to price erosion" and the "profits" it would have made but for IBM's misappropriation. (Mot. 4-7, emphasis added).

The problem is, these many damages-based relevance theories listed in GF's Motion are just that—purely theoretical.  GF cannot obtain discovery of a "competitor's business" merely by offering "theoretical argument that the requested information" would be relevant under "a number of divergent damage theories."  *Micro Motion*, 894 F.2d 1324-28 ("A party to litigation has no absolute right to pursue any and every alternative theory of damages, no matter how complicated or tenuous.").  To be sure, GF need not make any final decisions now about how it will prove damages.  But GF must "satisfactorily establish[] that each [damages] theory *[i]s actually* [a] 'subject matter involved in the pending action.'"  *Id.*[12]

---

[11] *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 808-14 (2d Cir.), *cert. denied*, 144 S. Ct. 352 (2023) (quoting 18 U.S.C. § 1836(b)(3)(B)).

[12] *Accord Ft. James*, 1998 WL 709813, at *1-3 ("[I]ntoning that discovery of the type sought is relevant to [the plaintiff's] damage theory (or theories) is insufficient."); *Am. Metal Prod. v. Gutter Topper Ltd.*, 1997 WL 666291, at *1-2 (S.D.N.Y. Oct. 24, 1997) (denying discovery; "One of [plaintiff's] theories of damages … is that it is entitled to the profits of defendant … on the sales of infringing products to the extent of its market share … Although that theory is certainly a viable one in a proper case, … I have no idea whether this is a proper case"); *Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 522-25 (W.D. Tenn. 1999) ("[I]t is unclear that [plaintiff's] 'lost market share' theory of damages is the 'subject matter involved in the pending action' … and that the information plaintiff seeks from [nonparty] is directly related to his theory of damages.").

Case 7:24-mc-00292-KMK-AEK   Document 17    Filed 07/24/24   Page 10 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 11 of 18
                              PageID.173

Page 10

GF's Motion thus fails at the outset, because GF makes no showing whatsoever that any of the theoretical damages theories it cites is an actual GF damages theory in this action. GF just identifies various mutually exclusive ways of proving damages in trade secret cases in the abstract.

**B.     GF is not entitled to discovery of Rapidus to prove damages because more probative information is available to GF from its own records and from IBM.**

Further, assuming GF had established that any of the hypothetical damages theories it identified actually was a GF damages theory "involved in the pending action" (*id.*), discovery of Rapidus still would not be warranted, because far more probative information is available from GF and IBM. *See Fishon*, 336 F.R.D. at 69 (compiling cases) ("'[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party.'"). This is evident from a review of GF's specific damages arguments under the three damages prongs of the DTSA.

**1.     Discovery of Rapidus is not needed to prove GF's claimed actual losses.**

GF cannot justify the requested discovery from Rapidus under an actual losses damage theory. "Actual losses" typically take the form of lost profits.[13] "The point of a lost profits analysis … is to estimate … the amount which the plaintiff would have made except for the defendant's wrong." *Capstone Logistics v. Navarrete*, 2018 WL 6786237, at *4-7 (S.D.N.Y. Dec. 13, 2018) (denying damages discovery under DTSA). GF already has access to sufficient data to prove its actual losses, if any, which is more probative data than Rapidus could provide.

For example, GF asserts that it may seek to show actual losses based on a loss of "market share." Mot. 6-7. That is what the plaintiff did in the *Agilent Technologies v. Kirkland* trade secret case. 2010 WL 610725, at *28-29 (Del. Ch. Feb. 18, 2010). At trial, the plaintiff's expert

---

[13] *E.g.*, *Syntel Sterling*, 68 F.4th at 811-14 ("actual loss of $8.5 million in lost profits"); Mot. 6-7 ("GF may recover … 'profits' it would have made but for IBM's misappropriation.").

Case 7:24-mc-00292-KMK-AEK   Document 17   Filed 07/24/24   Page 11 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 12 of 18
PageID.174

Page 11

explained that his damages model assumed the defendant's infringing sales would have been split among the plaintiff and its competitors based on their market shares. The expert thus determined that the plaintiff "would have gotten about 20 percent of [the sales]." Trial Testimony of G. Leonard, 2009 WL 8188586 (Del. Ch. Sept. 14, 2009). **"[T]he documents [he] relied on as evidence for [plaintiff's] market share" were "various industry reports," plus "one … document" from plaintiff; and to determine the amount of infringing sales, he used "the sales data[] that was produced by [defendant]."** *Id.* (emphasis added). Finally, he "applied [plaintiff's] 20% market share" to the infringing sales to calculate the damages. 2010 WL 610725, at *29.

GF, likewise, can prove its market share using its own materials and publicly available information.[14] As for data regarding the allegedly infringing sales, IBM has provided GF the "actual and projected revenues from the Intel and Rapidus partnerships." ECF No. 412 at 8. There is no need for GF to resort to discovery of Rapidus to prove its claimed actual loss damages.

Alternatively, if GF decides to calculate its actual losses by projecting its lost profits using historical records (Mot. 6-7), GF can do so using IBM's and GF's revenue records regarding the claimed trade secrets, spanning back into the 2010s. Such long-term records of past revenues are a "solid basis on which to estimate [plaintiff's] 'presumed lost revenues'" from claimed trade secret violations. *Capstone*, 2018 WL 6786237, at *5-6 (denying discovery).[15] In contrast, damages discovery of a business is denied where, as here, that business "is much smaller than [the plaintiff], with fewer customers [and] is still in a start-up phase," which "make[s] the economics of [its

---

[14] *See, e.g.*, https://www.statista.com/statistics/867223/worldwide-semiconductor-foundries-by-market-share/ (market shares for GF and other major semiconductor foundries).

[15] GF can use the same GF and IBM records to seek to prove that the disclosed information derives independent economic value from not being known to others who can make valuable use of it, as required to be a trade secret. Mot. 4; *see Marky's Martial Arts, Inc. v. FC Online Mktg.*, 2022 WL 18276016, at *5 (S.D.N.Y. Sept. 16, 2022), *adopted*, 2023 WL 171401 (Jan. 12, 2023) (awarding damages based on the "profits [plaintiff] lost from Defendant having sold its" information, and concluding it was a trade secret from the same "fact that Defendant was able to sell" it).

Case 7:24-mc-00292-KMK-AEK   Document 17    Filed 07/24/24   Page 12 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 13 of 18
PageID.175

Page 12

business] quite different from the economics of the [the plaintiff]." *Id*. Indeed, Rapidus has been in business for little more than a year, and has yet to sell any products (Fukuzaki Decl. ¶¶ 5-6), so its business history is an exceedingly unreliable basis for estimating GF's claimed lost profits.[16]

Worse yet, the Rapidus future sales information sought by GF would be for Rapidus' downstream sales of products that allegedly just derive in part from GF's claimed trade secrets.[17] To show actual losses, GF would have to (i) speculate about the amount of future Rapidus sales of hypothetical future products to hypothetical customers, without a history of prior sales; (ii) isolate what proportion of the profits from those hypothetical sales would derive from GF's trade secrets, which GF still has not even clearly identified; (iii) show that those hypothetical future sales by Rapidus interfered with hypothetical future sales by GF; and (iv) estimate how much more GF would have profited if it had made those hypothetically-interfered-with sales.

Courts do not allow discovery to pursue damages under such attenuated and speculative theories.[18] "Whatever profits are realized" by Rapidus would "be so attenuated or distant from the alleged" disclosures at issue "as to render [this] extensive discovery [] meaningless." *Ocean Atl. Woodland v. DRH Cambridge Homes*, 262 F. Supp. 2d 923, 929 (N.D. Ill. 2003).

### 2.   Discovery of Rapidus is not needed to prove unjust enrichment.

GF includes a one-sentence argument that it "may also calculate unjust enrichment damages" using "the time and R&D costs that Rapidus expected to save by partnering with IBM

---

[16] *See, e.g.*, *Marky's Martial Arts*, 2022 WL 18276016, at *6-10 (rejecting "lost profits calculation" as "pure speculation" because it assumed plaintiff would have "continued converting prospective clients into new clients … at the same rate" as during a brief initial period).

[17] *See, e.g.*, Mot. Ex. 3, RFPs No. 11, 17 (seeking documents regarding "derivative products").

[18] *E.g.*, *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 368 (S.D.N.Y. 2010) ("[T]he relevance … is attenuated, and [other] documents … should provide adequate information … for calculating actual damages"); *Medimpact Healthcare Sys. v. IQVIA Inc.*, 2022 WL 126307, at *3 (S.D. Cal. Jan. 13, 2022) (denying discovery because it was not related to the allegedly misappropriated trade secrets and asserted relevance grounds were "too attenuated and speculative").

Case 7:24-mc-00292-KMK-AEK   Document 17    Filed 07/24/24   Page 13 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 14 of 18
                             PageID.176

Page 13

as opposed to independently developing the technology at issue itself." Mot. 5. But where unjust enrichment damages are available under the DTSA, they seek to return "to the plaintiff the enrichment unjustly acquired *by the defendant*" (*id.*, emphasis added)—that is, the alleged enrichment of *IBM*, not the cost savings to Rapidus, which are irrelevant. GF already has the documents detailing the amount that Rapidus paid IBM in relation to their joint venture. And to the extent GF needs IBM revenues data, GF can get it directly from IBM. *See* ECF No. 412 at 8.

### 3. Discovery of Rapidus is not needed for a reasonable royalty analysis.

Finally, GF asserts that discovery of Rapidus would be relevant to a "reasonable royalty" damages theory, under which "GF's damages expert may calculate … the 'fair licensing price' IBM should have paid GF to use its trade secrets." Mot. 4-5. As the Second Circuit has held:

> A reasonable royalty award attempts to measure a hypothetically agreed value of what *the defendant* wrongfully obtained from the *plaintiff*. … [T]he court calculates what *the parties* would have agreed to as a fair licensing price at the time that the misappropriation occurred.[19]

The proper factors for a court to consider in determining a reasonable royalty are thus focused on what the *defendant* would have paid the *plaintiff* for its specific uses.[20]

GF already has access, through party discovery, to the most probative data regarding a reasonable royalty—IBM's and GF's own records of their negotiations for GF to purchase the claimed trade secrets, and IBM's and GF's own valuations and profit projections with respect to

---

[19] *Vt. Microsys. v. Autodesk, Inc.* ("*Autodesk II*"), 138 F.3d 449, 450-53 (2d Cir. 1998) (emphasis added) (quoting *Vt. Microsys v. Autodesk, Inc.* ("*Autodesk I*"), 88 F.3d 142, 151 (2d Cir. 1996)).

[20] *E.g.*, *Autodesk I*, 88 F.3d at 151-52 (citing factors such as "the total value of the secret to the plaintiff, including the plaintiff's development costs and the importance of the secret to the plaintiff's business," "the nature and extent of the use the defendant intended for the secret"); *accord Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers*, 446 F.2d 295, 296-97 (2d Cir.), *cert. denied*, 404 U.S. 870 (1971) (determining reasonable royalty based on defendant's profits).

Case 7:24-mc-00292-KMK-AEK   Document 17    Filed 07/24/24   Page 14 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 15 of 18
PageID.177

Page 14

the claimed trade secrets. As GF has said, "We need the valuations from *IBM* about how *IBM* valued this relationship." Ex. 3, Jan. 19, 2024 Conf. Tr. 112:14-18 (emphasis added).

In contrast, Rapidus has no sales history (Fukuzaki Decl. ¶¶ 5-6), and its uses of information from IBM to make downstream products are distinct from IBM's uses, so any future sales it eventually might make would be a poor basis for any GF reasonable royalty estimate. *See Stanacard, LLC v. Rubard LLC*, 2016 WL 6820741, at *1-4 (S.D.N.Y. Nov. 10, 2016) ("[A] reasonable royalty is not an appropriate measure of [] damages" where there is not a sufficient "history of licensing or otherwise assigning a value to the alleged misappropriated trade secrets").

Further, GF already has the IBM-Rapidus contract showing the market price paid by Rapidus for the information it is receiving from IBM. Mot. 5. GF claims it seeks internal Rapidus valuations so "GF's damages expert [can] properly apportion the value attributed to the misappropriated trade secrets" versus "other aspects of [the IBM-Rapidus] partnership." *Id.* But GF can do that using IBM-Rapidus negotiation records produced by IBM. In contrast, a Rapidus internal "subjective valuation … does not permit the court to calculate the true market price" of specific parts of the IBM-Rapidus contract.[21] There is also no reason Rapidus would have done a valuation of *the specific portion of IBM information that consisted of GF's alleged trade secrets*, when GF had made no such allegation while Rapidus was negotiating with IBM (and GF still has not clearly identified its claimed trade secrets to this day, to Rapidus' knowledge). Any Rapidus valuation thus would "not [be] probative of the market value" of GF's alleged trade secrets.[22]

---

[21] *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 234-37 (S.D.N.Y. 2019) (compiling cases and quoting *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1119 (C.D. Cal. 2015)) (damages could not be proven using "evidence [that] measures consumers' private valuations … [and thus] does not measure the market value").

[22] *Antenna Television v. Aegean Video Inc.*, 1996 WL 298252, at *4 (E.D.N.Y. Apr. 23, 1996) (recommending that no actual damages be awarded; "Since these licenses do not grant identical rights, it is possible, if not likely, that they have different market values.").

Case 7:24-mc-00292-KMK-AEK  Document 17  Filed 07/24/24  Page 15 of 17
Case 1:24-mc-00654-JAO-WRP  Document 1-9  Filed 11/15/24  Page 16 of 18
PageID.178

Page 15

**IV. None of GF's individual document requests has any non-duplicative relevance, and GF has failed to show any substantial need for the requested materials.**

As shown above, GF's Motion should be denied in its entirety because GF has failed to show any non-duplicative relevance of any Rapidus materials, let alone a substantial need. This is true of all the individual RFPs in GF's Motion, as shown below:

- RFPs No. 2, 3, 4 and 6 seek information regarding Rapidus' entry into its agreements with IBM and the consideration exchanged thereunder. Mot. Ex. 3. But IBM can produce documents showing its negotiations with Rapidus, how any consideration was determined, and the value of any information Rapidus would be receiving. *Supra* 13-14.

- RFPs No. 8-9, "as narrowed by GF, seek documents 'sufficient to show any IBM Licensed Technology distributed to (RFP 8) or created by (RFP 9) Rapidus Employees'" in Albany. Mot. 5. But IBM can provide GF any necessary documentation as to what information it distributed. As for "IBM Licensed Technology … created by … Rapidus," this phrase is self-contradictory and nonsensical. If GF meant to seek documents about Rapidus derivative products to prove its damages, then as shown above, those documents would be far less probative than the GF and IBM records already available to GF, so it has no need for them. *Supra* 11-12.

- RFPs No. 11, 16 and 17 seek virtually all substantive documents Rapidus has—all documents relating to any information provided to Rapidus by IBM under their agreement, any technologies developed in the IBM-Rapidus partnership and related products, and the market therefor. Mot. Ex. 3. These requests are plainly overbroad and unduly burdensome. *Supra* 4-8.

- RFP No. 12, "as narrowed, seeks documents 'that refer to GF's relationship with IBM, GF's intellectual property rights, or GF's claims in this lawsuit against IBM.'" Mot. 7. But GF can obtain from IBM any such documents exchanged between IBM and Rapidus. And Rapidus' *internal* views about GF are irrelevant to GF's claims against IBM. GF perhaps seeks to fish for support for a new claim against Rapidus, in hopes of showing under the DTSA that Rapidus "knew or had reason to know" it was receiving GF trade secrets.[23] But the Federal Rules forbid such a "'fishing expedition' into … wrongdoing not related to the alleged claims" in *this* case.[24] "[A] discovery request [] to gather information for use in proceedings other than the pending suit … properly is denied." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 352 n.17 (1978).

**CONCLUSION**

For all the foregoing reasons, the Court should deny GF's Motion.

---

[23] 18 U.S.C. § 1839(5)(B)(ii) (emphasis added) (limiting definition of "misappropriation" based on use of trade secret to when the user "knew or had reason to know" of impropriety).

[24] *Hong v. JP White Plains, Inc.*, 2023 WL 5173785, at *3 (S.D.N.Y. July 31, 2023) (quoting *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (compiling cases)).

Case 7:24-mc-00292-KMK-AEK   Document 17   Filed 07/24/24   Page 16 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 17 of 18
PageID.179

Page 16

Dated: July 24, 2024

By: s/Krishnan Padmanabhan
Krishnan Padmanabhan
Mark E. Rizik Jr.
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700
kpadmanabhan@winston.com
mrizik@winston.com

*Counsel for Nonparty Rapidus US, LLC*

Case 7:24-mc-00292-KMK-AEK   Document 17   Filed 07/24/24   Page 17 of 17
Case 1:24-mc-00654-JAO-WRP   Document 1-9   Filed 11/15/24   Page 18 of 18
                              PageID.180

                                                                    Page 17

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that, on July 24, 2024, a true and correct copy of the foregoing document was served by public ECF filing upon counsel of record in *GlobalFoundries U.S. Inc. v. International Business Machines Corporation*, No. 7:24-mc-00292-KMK-AEK (S.D.N.Y.).

Dated: New York, New York
       July 24, 2024

                                              s/Krishnan Padmanabhan
                                              Krishnan Padmanabhan